[No. B097347. Second Dist., Div. Three. Oct. 30, 1996.]

BLAKE SCHWARTZMAN et al., Plaintiffs and Respondents, v. STEPHEN WILSHINSKY et al., Defendants and Appellants.

620

**COUNSEL**

David M. Browne for Defendants and Appellants.

Glassman, Browning & Saltsman, Steven Berkowitz and Lori Nielsen for Plaintiffs and Respondents.

## OPINION

**CROSKEY, J.**—This is an appeal from an order made after judgment, by which the court below denied appellant's claim of exemption as to all funds held in his individual retirement account (IRA), except an amount determined to be required for the payment of taxes, and as to all employee contributions and matching employer contributions held in the 401K profit-sharing account established by appellant's employer.[1] Appellant seeks reversal on the grounds that the trial court's decision is not supported by substantial evidence and that the court erred in interpreting the terms "self-employment plan" and "individual retirement account" in Code of Civil Procedure section 704.115, subdivision (a)(3). The court held that the statute included employee contributions, and that federal law prohibits execution upon Employee Retirement Income Security Act (ERISA) qualified retirement plans such as the profit-sharing plan in this case.

For the reasons set out below, we affirm the judgment as it relates to appellant's IRA, and reverse as it relates to the employer's profit-sharing plan. We do not need to reach or discuss the ERISA issue.

### FACTUAL AND PROCEDURAL HISTORY

Judgment was entered against appellant, Stephen Wilshinsky, on September 27, 1994 in the sum of $1,750,000 in favor of respondents, Blake Schwartzman and James Hartman. Respondents proceeded to enforce the judgment, and obtained a turnover order requiring appellant to deliver to respondents his IRA account and 401K account. On June 27, 1995, appellant filed a claim of exemption pursuant to Code of Civil Procedure section 704.115. The claim of exemption was supported by appellant's memorandum of points and authorities, his declaration, and the declaration of his attorney. Attached to appellant's declaration was a copy of two account statements, one regarding the IRA and one regarding the 401K, as well as a copy of the 401K plan summary, and appellant's enrollment forms. Also attached was a one-page balance sheet.

In his declaration, appellant states that the attached IRA statement is a true and correct copy of the original, that he created the IRA account before his

---

[1] It is unnecessary to our decision to determine whether the employer's plan was a true 401K plan under the Internal Revenue Code. The parties refer to the Sutro & Co. Profit-Sharing Retirement Plan as a 401K plan, and for convenience, we will do so occasionally, as well.

current employment with Sutro & Co., transferred it to his present employer, and has not made contributions to it since. He further states that the 401K statement is a true and correct copy of the original, that the plan summary was prepared by his employer, and the enrollment forms are copies of the papers by which the account was opened. In lieu of a detailed, verified financial statement described in Code of Civil Procedure section 703.530, appellant provided a summary in his declaration of his usual earnings, the amount of child or spousal support (not specified) paid, and the number, ages, and names of his dependents. The attached balance sheet shows a superficial summary of assets and liabilities.

The 401K plan summary is entitled, "Summary Plan Description for the Profit-Sharing Retirement Plan and Trust Agreement for Employees of Sutro & Co. Incorporated." In it, the plan is described as "a Plan where contributions may be made by you and the Company which are held in a trust to provide you with additional income when you retire. In addition, the Plan provides benefits if you should die, become disabled, or terminate your employment."

Respondents did not make any evidentiary objections in the course of opposing appellant's claim of exemption and have submitted portions of the transcript of his judgment debtor's examination. In it, appellant testified that he lives in a rented three-bedroom condominium for which he pays $1,100 per month, while his wife and three children live in the family home. His wife has not been employed outside the home since 1983, and appellant pays her support of $15,000 per month. In addition to the first mortgage on his home of $500,000, there is a $121,000 loan for earthquake repairs. Appellant has paid between $30,000 and $40,000 for repairs out of his own pocket since March or April 1995, and there remains $50,000 to $60,000 worth of repairs left to do. Appellant leases a 1995 Cadillac for $559.67 per month, and obtained a loan of $25,000 in 1994 to pay his children's tuition, which is $18,000. Appellant has been employed by Sutro & Co. since September 1993 as a senior vice-president, and in 1994, he earned $475,956. On an unspecified date, appellant withdrew $40,000 from his children's trust on the advice of counsel, to pay bills. There remain $50,000 or $60,000. On approximately March 28, 1995, appellant had $66,224 in an unspecified account, and on an unspecified date, he received a refund on his 1993 taxes. In March 1995, appellant received a tax refund of $27,000, which went to pay bills, and the remainder was gifted to his children's trust. There is some testimony about $25,000 and whether its receipt was reported to appellant's

partners, but it is too fragmented to comprehend. Appellant paid $120,000 in legal fees in 1994, and made charitable gifts of $21,411.[2]

Respondents also submitted two declarations of their attorney, in which he summarizes portions of the debtor's examination testimony and the contents of the judgment, states that appellant has not paid any portion of the judgment, and that appellant's wife testified in her examination that $100,000 was deposited in the children's trust (although no date was given). He concludes with his opinion that "[e]very attempt has been made by [appellant] to shield or conceal his money and assets from the collection efforts of judgment creditors." Appellant made no evidentiary objections to this submission.

On August 15, 1995, the trial court denied appellant's claim of exemption in its entirety as to the IRA account, and ordered that $1,500 of it be turned over, leaving the remainder for payment of taxes. As to the 401K, the court found that it was a "hybrid" account, part 401K and part profit-sharing plan (without explaining the distinction or its relevance), and held that only the employer's profit-sharing contributions were exempt. The court ordered the parties to determine how much was the result of 401K contributions, whether by appellant or his employer, and for appellant to turn over 60 percent of that sum, retaining the remainder for taxes. On September 28, 1995, appellant filed a motion for reconsideration, along with a copy of the full "Profit-Sharing Retirement Plan and Trust Agreement for Employees of Sutro & Co. Incorporated." The motion was never heard, and the notice of appeal was filed on October 13, 1995.

## THE PARTIES' CONTENTIONS

### 1. *Appellant's Contentions.*

#### a. *The IRA.*

Appellant recognizes that under Code of Civil Procedure section 704.115, subdivision (e), an IRA is exempt only to the extent necessary to provide for the support of the judgment debtor and his dependents when the judgment debtor retires, taking into account all resources that are likely to be available

---

[2]Respondents have submitted only excerpts from the transcript. It may be that omitted pages provide the information described here as unspecified, but it is impossible to determine on the basis of the record provided.

at the time of retirement.[3] Appellant argues that it is unlikely that he will have any other resources available for retirement, as he can never hope to pay even the interest on a $1,750,000 judgment, and have any sum left over for retirement. He argues that, because of the size of the judgment, even if he did replenish his IRA, the replenished amount would also be subject to seizure, so he would never have retirement funds.

### b. The 401K.

Appellant contends that the 401K plan is entirely exempt from execution, as it falls within the definition of "private retirement plan" of subdivision (a)(1) and (2) of Code of Civil Procedure section 704.115, and is therefore not an IRA or self-employment plan subject to the "extent necessary" limitation of subdivision (a)(3).[4] Appellant argues that the trial court erred in finding that the 401K was a "hybrid" simply because there were employee contributions to the plan. Appellant also urges the application of federal law which exempts ERISA qualified plans from execution or inclusion in a bankruptcy estate.

### 2. Respondents' Contentions.

### a. The IRA.

Respondents contend that the court's determination that the IRA was not necessary to provide for appellant and his dependents was supported by substantial evidence, pointing out, among other facts, that appellant was 40 years old at the time of the hearing, had been a stockbroker since 1978, had earned $476,000 in 1994, had substantial assets, and maintains a "high style of living."

### b. The 401K.

Respondents support the trial court's refusal to exempt employee contributions and matching employer contributions to the 401K with an analogy to bankruptcy cases decided in relation to whether voluntary employee contributions to a plan or trust are property of the bankruptcy estate. Respondents

---

[3]The "extent necessary" limitation applies to "Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended . . . ." (Code Civ. Proc., § 704.115, subd. (a)(3).)

[4]Code of Civil Procedure section 704.115, subdivision (a) defines "private retirement plans" as "(1) Private retirement plans, including, but not limited to, union retirement plans[, and] [¶] (2) Profit-sharing plans designed and used for retirement purposes."

argue that the 401K plan is not "designed and used for retirement purposes," which is a prerequisite to exemption under Code of Civil Procedure section 704.115, subdivision (a)(1), because the control which appellant exercised over the plan showed a purpose to shield his assets in order to defraud creditors, not to use them for retirement. Finally, respondents argue that federal law exempting ERISA plans should not be considered, because appellant has raised it for the first time on appeal, and as the full plan document was not before the court (except in the motion to reconsider, which was not heard), appellant's contention is not supported by substantial evidence.

DISCUSSION

1. *Scope of Review.*

■ Orders granting or denying a claim of exemption are appealable. (Code Civ. Proc., § 703.600.) ■ A judgment or order of the trial court is presumed correct, and must be upheld if it is supported by substantial evidence, no matter how slight it may be. (See *Chodos* v. *Insurance Co. of North America* (1981) 126 Cal.App.3d 86, 97 [178 Cal.Rptr. 831].) Further, all evidence must be viewed in the light most favorable to the prevailing party, and all conflicts in evidence or in inferences must be resolved in favor of upholding the trial court's judgment or order. (See *Estate of Leslie* (1984) 37 Cal.3d 186, 201 [207 Cal.Rptr. 561, 689 P.2d 133]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) Where sufficiency of the evidence is questioned, the duty of an appellate court begins and ends with a determination that there is in the record evidence legally sufficient to support the judgment or order. (See *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].) Where there is no conflict in the evidence, or an issue is presented on appeal upon undisputed facts, the appellate court is free to draw its own conclusions of law. (*McMillin-BCED/Miramar Ranch North* v. *County of San Diego* (1995) 31 Cal.App.4th 545, 553 [37 Cal.Rptr.2d 472].)

2. *The Court's Determination That the IRA Was Not Exempt Is Supported by Substantial Evidence.*

■ Appellant's contention that the IRA was necessary to provide for his support and the support of his dependents upon retirement presented a factual issue to the trial court, upon which appellant had the burden of proof. (See Code Civ. Proc., § 703.580, subd. (b).) "If property is claimed as

exempt pursuant to a provision exempting property to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor, the claim of exemption shall include a financial statement." (Code Civ. Proc., § 703.530, subd. (a).) The financial statement shall be executed under oath, and include all sources and amounts of earnings and other income, a list of assets, and all outstanding obligations. (Code Civ. Proc., § 703.530, subd. (b).)

Appellant did not file a financial statement, but instead, stated some of the required facts in his declaration, and attached an unverified, very brief, balance sheet. The only fact which appellant points to in support of his "extent necessary" argument concerns the size of the judgment, $1,750,000, arguing that he cannot possibly pay even the interest on such a judgment, and still have enough to support himself and his dependents in retirement. It is impossible to tell from appellant's showing whether he is making payments on the debts listed on his balance sheet, or whether payment is made from the $15,000 in support which he pays to his wife. He states that he does not have any "appreciable" assets other than his home. The declaration and balance sheet do not substantially comply with Code of Civil Procedure section 703.530, subdivision (b)(4). One and three-quarters of a million dollars is a daunting sum, but it cannot be determined from that fact alone that appellant will not have the resources to support himself and his dependents in retirement. Evidence submitted by respondent shows that appellant's income from his employment as a stockbroker is nearly one-half million dollars per year, and that he owns a home in which he may have as much as $200,000 in equity. It can reasonably be inferred from appellant's impressive earning power that appellant will be able to do so, and appellant failed to meet his burden to provide enough evidence to avoid that inference.

### 3. *The 401K Is a Private Pension Plan, Exempt From Execution.*

It is not clear whether the trial court ruled, in essence, that under Code of Civil Procedure section 704.115, subdivisions (a)(3) and (e), contributions to an employer-established 401K plan are to be considered "[s]elf-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended . . ."; or whether the court was swayed by cases cited by respondent, interpreting bankruptcy law which does not exempt voluntary employee contributions from the bankruptcy estate. There is no analogy to be drawn with bankruptcy exemptions, as respondent urges. Bankruptcy exemptions are not recognized in state proceedings to enforce judgments. (Code Civ. Proc., § 703.130.) Whether or not an employee's contribution may be property of the bankruptcy estate under federal law is therefore not relevant to the determination

of what is exempt under Code of Civil Procedure section 704.115. The dispositive inquiry under the California statute is whether the plan was designed and used for retirement purposes. (*Yaesu Electronics Corp.* v. *Tamura* (1994) 28 Cal.App.4th 8, 14 [33 Cal.Rptr.2d 283].)

We agree with appellant's contention that the question of whether the 401K is fully exempt is one of law in this case, since the essential facts, as stated in appellant's declarations, are not in conflict.[5] Appellant is an employee of Sutro & Co. His employer provides a "Profit-Sharing Retirement Plan" for its employees, which, according to appellant, is maintained solely for retirement purposes. Appellant enrolled in the Sutro & Co. plan at the time he became employed with the company in 1993, although a portion of the account consists of rollover funds from a 401K plan with appellant's previous employer. Appellant contributes 15 percent of his salary to the plan, the maximum amount authorized in the plan for employees' tax-deferred contributions, and there are employer contributions, which are explained in the plan summary. The plan is administered by an administrative committee composed of certain named employees, who are appointed by the board of directors of the company. The summary also names three trustees. Withdrawals from the plan prior to the age of 59½ are not permitted except for certain enumerated "financial hardship purposes," and the participant is entitled to the full value of the account at age 65. Appellant has never taken any distributions or loans from it, he does not have the authority to manage the plan or disregard the plan rules, and, according to appellant, the account is a "real" 401K account.

Respondents would have us infer that the Sutro & Co. plan was not designed for or used for retirement purposes from evidence that appellant maintained a high degree of control over the account and that he attempted to shield assets. No Court of Appeal has as yet examined this issue, but it has been discussed in several federal cases arising out of bankruptcy proceedings in which it was necessary to interpret Code of Civil Procedure section 704.115, subdivision (b). One such case involved a physician, who established a pension and profit-sharing plan from which he borrowed $75,000 to buy a house, and never paid back any principal or interest. (See, e.g., *In re Daniel* (9th Cir. 1985) 771 F.2d 1352, 1354, cert. den. 475 U.S. 1016 [89 L.Ed.2d 313, 106 S.Ct. 1199].) Then, just two weeks before filing bankruptcy, he deposited $39,000. (*Ibid.*) The court held that the plan was used to

---

[5]Where extrinsic evidence is not in conflict, the appellate court must make an independent determination of the meaning of an instrument. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 295, p. 306.) The factual assertions of the judgment debtor, if not controverted by the judgment creditor, must be taken as true. (*Lentfoehr* v. *Lentfoehr* (1955) 134 Cal.App.2d Supp. 905, 907 [286 P.2d 1019].)

meet the debtor's short-term personal needs by shielding or hiding funds from creditors, not for retirement purposes. (*Id.* at p. 1358.)[6] In contrast, another bankruptcy debtor took loans from her retirement account, but she followed the procedures set out in the plan, signed promissory notes, and paid reasonable interest; and there was no indication that she used the account to hide ineligible assets. (See, e.g., *In re Bloom* (9th Cir. 1988) 839 F.2d 1376, 1379.) The court held that the loans were not so abusive as to indicate a nonretirement purpose. (*Ibid.*)

Here, contrary to respondent's assertion that appellant maintained a high degree of control over his 401K account, appellant took no loans or disbursements; he did not contribute more than he was entitled; and he had no part in administering the plan.[7] The kind of control which would show a nonretirement purpose would be substantially all control over contributions, management, administration, and use of funds, and there is no such evidence here. (See *In re Cheng* (9th Cir. 1991) 943 F.2d 1114, 1116.) There is no evidence from which we can draw the inference respondent suggests. Nor is there evidence that appellant used the account to hide assets, an inference respondent would have us draw from the fact that appellant made a large gift to his children's trust. While one might infer that the children's trust is being used for an improper purpose, it does not follow that the Sutro & Co. plan has been used to hide "ineligible" assets. (See *In re Bloom*, *supra*, 839 F.2d at p. 1379.) Appellant's account under the plan consists of funds from his prior employer's plan and contributions made under the rules of this plan. The very purpose of the exemption is to permit a judgment debtor to place funds beyond the reach of creditors, so long as they qualify for the exemption under the law. (See *Yaesu Electronics Corp.* v. *Tamura*, *supra*, 28 Cal.App.4th at p. 13.) Thus, a transfer which might otherwise be fraudulent is permitted if the funds qualify for an exemption. There is nothing in the statute, however, which would permit denial of an exemption on the ground that *unrelated* funds are ineligible and have been fraudulently transferred.

Nor is there any language in the statute permitting the court to deny a claim of exemption as to a *portion* of the funds in a private retirement plan

---

[6]*In re Daniel* was disapproved by the Supreme Court in *Patterson* v. *Shumate* (1992) 504 U.S. 753, 757-758 [119 L.Ed.2d 519, 526, 112 S.Ct. 2242], only with regard to its interpretation of federal law.

[7]The plan purports to be a 401K plan. As appellant earns more than $75,000 per year, any contributions which exceed the amounts allowed by the Internal Revenue Code will be distributed to him as wages, or his subsequent contributions will be reduced. (See 26 U.S.C. §§ 401(m)(4)(B) and (C), 414(q)(1)(B).) As the plan is not controlled by appellant, but by trustees appointed under the plan, there is no reason to infer that it will be not be administered as a 401K plan in the manner required by the Internal Revenue Code. The mere fact that he contributes the maximum allowable under the plan does not give rise to an inference that he is hiding ineligible assets, because any ineligible assets will be distributed, and therefore subject to garnishment, or appellant's wages will by increased by the reduction in later contributions.

or profit-sharing plan designed and used for retirement purposes, other than the limitation in Code of Civil Procedure section 704.115, which pertains to *self-employed* retirement plans and *individual retirement annuities or accounts* provided for under the Internal Revenue Code. Appellant was an employee, and the plan was administered by his employer, so under the plain language of the statute, this was not a self-employment plan. The term, "individual retirement account," is defined in the Internal Revenue Code as a trust created for the exclusive benefit of an individual or his beneficiaries. (26 U.S.C. § 408(a).) An "individual retirement annuity" is defined in part as an annuity contract issued by an insurance company. (26 U.S.C. § 408(b).) The Sutro & Co. plan, by its terms, was created for the benefit of its employees, not just appellant as an individual. The statement submitted by appellant shows the funds to be invested in stocks and bonds, not in an annuity.

The exemption statutes should be construed, so far as practicable, to the benefit of the judgment debtor. (*Lampley* v. *Alvares* (1975) 50 Cal.App.3d 124, 128 [123 Cal.Rptr. 181].) There is no language in Code of Civil Procedure section 704.115 which defines "profit-sharing plan" as *only the part* of a plan which contains a portion of the employer's profits and which were not deposited to match employee contributions.[8] And even a very loose construction of the statute would not permit an interpretation of "self-employed retirement plan," "individual retirement account," or "individual retirement annuity" to mean employee contributions to an employer created and administered profit-sharing plan designed for retirement purposes.[9]

We need not reach appellant's argument that the Sutro & Co. was an ERISA qualified plan, and that the states may not preempt federal law which protects such plans, since we hold that the plan is exempt from execution under Code of Civil Procedure section 704.115, subdivision (b).

## DISPOSITION

The judgment is affirmed as to appellant's IRA, and reversed as to the Sutro & Co. Profit-Sharing Retirement Plan, referred to in the account statement as "Sutro & Co Profit-Sharing 401K Plan." The cause is remanded

---

[8]A 401K plan may be a "profit-sharing" plan even if the contributions are not based upon profits, and may include employee contributions and matching employer contributions. (See 26 U.S.C. § 401(a)(27)(A) and (k)(3)(D)(ii)(I).)

[9]The terms refer to IRA's and Keogh plans. (Cf. *In re Cheng, supra,* 943 F.2d at pp. 1116-1117.)

for further proceedings consistent with the views expressed herein. Appellant shall recover his costs on appeal.

Klein, P. J., and Aldrich, J., concurred.