Filed 1/24/14  Marriage of Vardi and Eliahu CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re the Marriage of SIGALIT VARDI AND EITAN ELIAHU. | H038931, H039676 (Santa Clara County Super. Ct. No. FL116729) |
| SIGALIT VARDI, Respondent, v. EITAN ELIAHU, Appellant. | |

## I.  INTRODUCTION

In this marital dissolution action, the qualified domestic relations order (QDRO)[1] filed on March 12, 2010, awarded respondent Sigalit Vardi her community property interest in appellant Eitan Eliahu's retirement account.  Finding that Eliahu had previously transferred the funds in the retirement account to his own accounts, on September 21, 2010, the trial court ordered issuance of a judgment in favor of Vardi and against Eliahu in the amount of $52,466.  The judgment was not satisfied and on

---

[1]  A " 'QDRO is a subset of "domestic relations orders" that recognizes the right of an alternate payee to "receive all or a portion of the benefits payable with respect to a participant under [a retirement benefits] plan."  29 U.S.C. § 1056(d)(3)(B)(i)(I).' [Citations.]"  (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 840-841.)

September 20, 2012, the trial court ordered that the amount of $63,558.62 ($52,466 plus attorney's fees and interest), be paid to Vardi from an escrow account containing the proceeds of Eliahu's voluntary sale of his residence. On May 15, 2013, the court denied Eliahu's claim of exemption as to the escrow funds.

Eliahu, a self-represented litigant, has appealed the September 20, 2012 order (case No. H038931) and the May 15, 2013 order (case No. H039676).[2] This court on its own motion ordered the two appeals to be considered together for purposes of oral argument and disposition. For the reasons stated below, we will affirm both orders.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Eliahu and Vardi were married in 1993 and separated in 2004. The issues in the present case arise from the disposition of the parties' community property interest in a defined contribution plan known as the Quality Kernel, LLC profit sharing plan. Eliahu was a participant in the plan (hereafter, the retirement account) and Vardi was an alternate payee.

On March 12, 2010, the trial court issued a QDRO that assigned Vardi as her sole and separate property more than $41,000 from the retirement account. The QDRO also provided that Vardi's funds would be distributed to her from the retirement account as soon as administratively possible. However, when the QDRO was submitted to the financial institution by the neutral attorney who had prepared the QDRO, the attorney was informed that there were no funds in the retirement account. In April 2010 Vardi filed an ex parte motion requesting that the trial court issue a judgment in her favor in the amount of the original QDRO plus an expected rate of return.

---

[2] During oral argument, Eliahu argued that the trial court had failed to rule on his motion to have Vardi declared a vexatious litigant. We do not address the issue because our review is limited to the two appeals before us in case No. H038931 and case No. H039676.

2

On September 21, 2010, the trial court granted Vardi's ex parte motion and ordered issuance of a judgment in the amount of $52,466 in Vardi's favor, plus attorney's fees in the amount of $5,000 pursuant to Family Code section 271. In its order, the court stated that Vardi had "presented credible evidence that prior to March 12, 2010, funds were transferred out of the 'QDRO' account and concurrent similar amount deposits were deposited in accounts belonging to [Eliahu]."

Eliahu brought a motion for reconsideration of the September 21, 2010 attorney's fees order. The record reflects (as stated in the court's December 3, 2012 order)[3] that due to the motion for reconsideration the trial court had "temporarily stayed enforcement of the judgment." The December 3, 2012 order further states that "[a]t the hearing on November 3, 2010, the parties agreed that [Eliahu] could prepare a new QDRO, so as to eliminate the need for the judgment. [Eliahu] was given until November 17, 2010 to comply. [Eliahu] did not timely comply. On December 7, 2010, the Court . . . lifted the stay on enforcement of the judgment and lowered the attorney fees to $1,000."

On April 6, 2012, Vardi filed an abstract of judgment and writ of execution in the amount of $52,466, "based upon the judgment entered on September 21, 2010." In June 2012 Eliahu applied ex parte for "determination of the character of the judgment and for an order that the funds necessary to satisfy [Vardi's] judgment lien be held in trust pending further court order." As recounted in the December 3, 2012 order, the trial court then "issued an ex parte order that the title company withhold any sums due under the judgment lien . . . and deliver these funds to [Vardi and to Eliahu's attorney] to be placed in a blocked account subject to withdrawal upon written agreement or order of the court."

The minute order of August 6, 2012 indicates that the trial court ruled that "[t]he amount of $52,466, attorney fees of $1,000 and statutory debt to be agreed upon by

---

[3] The December 3, 2012 order was included in the record but not appealed. The order includes a partial procedural history of this marital dissolution action as it pertains to the QDRO that is addressed in the present appeals.

3

Parties is due and payable in monies from Trust account." Eliahu filed an ex parte motion for reconsideration of the August 6, 2012 order, which the trial court denied pending hearing.

On September 7, 2012, Vardi filed an ex parte application requesting that the funds being held in escrow from the sale of real property located at 1470 Hollidale Court, Los Altos, remain in the escrow account until they were released on court order to satisfy her judgment. The documents attached to the application indicated that the funds were the proceeds of Eliahu's voluntary sale of his residential property. The trial court granted the application and entered a September 7, 2012 order directing that the funds being held in escrow with First American Title Company "relating to the sale of the real property located at 1470 Hollidale Court, Los Altos" remain in escrow "pending the distribution of funds after service of a certified copy of the Findings and Order After Hearing of August 6, 2012."[4]

The findings and order after hearing subsequently filed on September 20, 2012, is the subject of the appeal in case No. H038931. The September 20, 2012 order provides as follows: (1) Vardi "shall forthwith receive" the sum of $53,466 (the principal amount of $52,466 plus attorney's fees of $1,000) from the funds held in escrow by First American Title Company; (2) in addition, Vardi "shall forthwith receive" the sum of $10,092.62 from the funds held in escrow by First American Title Company for interest through August 9, 2012, plus additional interest of $14.65 per day until the principal sums and interest are paid from escrow; (3) after full payment to Vardi, any sums of money remaining in the escrow account shall be paid to Eliahu as his sole and separate property; (4) on check payment, Vardi shall record a satisfaction of judgment; (5) on check payment, a Merrill Lynch IRA account shall be retained by Eliahu as his sole and

_____

[4] The record on appeal does not include the findings and order of August 6, 2012.

4

separate property; (6) Eliahu's "request for court determination that judgment monies be deemed pre-tax dollars is denied"; and (7) Eliahu's request for a stay order is denied.

On October 19, 2012, the trial court issued a writ of execution (money judgment) in the amount of $52,491.00 plus interest, which directed the sheriff of Santa Clara County to enforce the September 21, 2010 judgment. Eliahu filed a claim of exemption on November 5, 2012. The claim of exemption stated that the funds claimed to be exempt were the "proceeds of the sale of [Eliahu's] home at 1470 Hollidale Court, Los Altos" and that the code sections that applied were Code of Civil Procedure[5] sections "704.800" and "704.710-704-850 ($75,000 head of a household exempt)."

Vardi filed a notice of opposition to the claim of exemption, in which she stated that Eliahu had sold the house located at 1470 Hollidale Court, Los Altos on June 12, 2012, for $2,250,000, "of which approximately $720,000 were disbursed to pay back his mortgage." Vardi also stated that Eliahu had voluntarily sold the house, there had not been a court determination that the property was a homestead, and even if there had been, Eliahu's net proceeds from the sale of $1,530,000 far exceeded the homestead exemption amount.

The trial court denied the claim of exemption in its findings and order filed on May 15, 2013. During the hearing on the claim of exemption, the trial court determined that "based on the evidence that has been presented to me that even if a homestead exemption existed, that more than the homestead exemption would have been disbursed according to the Code of Civil Procedure, therefore, I can't find any basis to grant the claim of exemption." The May 15, 2013 order is the subject of the appeal in case No. H039676.

---

[5] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

Eliahu filed timely a notice of appeal from the September 20, 2012 order in case No. H038931 and a timely notice of appeal from the May 15, 2013 order in case No. H039676.[6] We will discuss each appeal separately.

### A. *Case No. H038931*

As a threshold matter, we determine that the September 20, 2012 order directing payment of the judgment from the funds being held in escrow by First American Title Company is appealable as a collateral order directing payment of money.[7] "When a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken. [Citation.]" (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 (*Skelley*); see also *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 561.)

We understand Eliahu to contend in this appeal that the September 20, 2012 order should be reversed because (1) ordering payment of Vardi's share of the retirement account from funds held in escrow directly conflicts with the prior orders of September 21, 2010, and December 7, 2010, providing for payment by way of a QDRO; (2) authorizing collection of the judgment from funds held in escrow, which are the proceeds of his sale of his house, renders him liable for penalties and taxes because Vardi will not receive the funds as pre-tax retirement benefits; (3) the trial court exceeded its authority by failing to conform the September 20, 2012 order to the court's prior

---

[6] In each appeal, Eliahu has filed a document entitled "Verified Statement of Disqualification of Judges." We will treat the documents as motions to disqualify three members of this court for cause. Both motions are denied. (See *Kaufman v. Court of Appeal* (1982) 31 Cal.3d 933, 939–940; see also *Lebbos v. State Bar* (1991) 53 Cal.3d 37, 41.)

[7] On March 8, 2013, this court denied Eliahu's petition for a writ of supersedeas, in which he sought a stay of enforcement of the September 20, 2012 order.

intention that payment be made by way of a QDRO, as indicated in the November 3, 2010 hearing; (4) the trial court exceeded its authority in awarding interest on the judgment since the issue of interest was not before the court; (5) the trial court exceeded its authority by issuing an order for interest that contradicted the QDRO; (6) "the conclusion that December 7, 2010 order supposedly changed the characteristics of the funds is false"; and (7) Vardi will be unjustly enriched because Eliahu will be required to pay all taxes, penalties, and interest on Vardi's share of the retirement funds.

Our consideration of the issues that Eliahu seeks to raise on appeal in case No. H038931 is limited pursuant to the rules governing appeals. One important rule is that "[i]f a party fails to appeal an appealable order within the prescribed time, this court is without jurisdiction to review that order on a subsequent appeal. [Citations.]" (*In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 219 (*Lloyd*); see also § 906 ["The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."].)

Here, it appears that Eliahu's primary challenge is to the trial court's decision, as set forth in the September 21, 2010 order, that Vardi's community share of Eliahu's retirement account would be payable to her by way of a money judgment rather than a QDRO, since the financial institution could not comply with the QDRO due to the lack of funds in the retirement account. The court stated in the September 21, 2010 order that Vardi had presented credible evidence that the retirement account funds had been transferred to Eliahu's own accounts. The September 21, 2010 order was appealable as an interlocutory collateral order directing the payment of money. (See *Skelley*, *supra*, 18 Cal.3d at p. 368). Since Eliahu did not appeal the September 21, 2010 order, we may not review the merits of that order, including any issue arising from the court's ruling that Vardi's share of the retirement account would be paid to her by way of a money judgment instead of a QDRO. (*Lloyd*, *supra*, 55 Cal.App.4th at p. 219.)

7

Another important rule of appellate procedure is that the trial court's judgment or order is presumed correct and on appeal, error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) The appellant therefore has the burden of raising claims of "reversible error or other defect" and to " 'present argument and authority on each point made' [citations]." (*In re Sade C.* (1996) 13 Cal.4th 952, 994 (*Sade C.*).) Eliahu is not exempt from compliance with the rule that an appellant must affirmatively show reversible error because he is representing himself on appeal. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation]." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) Thus, a self-represented litigant is not entitled to lenient treatment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

We observe that Eliahu's argument that the trial court erred in the September 20, 2012 order when the court directed payment of the money judgment from funds held in escrow, because he will be liable for taxes and penalties that he would not have to pay if payment was by way of a QDRO, is not supported by any legal authorities. Thus, even assuming that the issue is cognizable on appeal, Eliahu has not met his burden to affirmatively show reversible error. (See *Sade C.*, *supra*, 13 Cal.4th at p. 994.)

Eliahu also argues, without any citation to legal authority, that the trial court erred in awarding interest on the money judgment. Again, even assuming that this issue is cognizable on appeal, the absence of legal authority shows that Eliahu has not met his burden to affirmatively show reversible error. (See *Sade C, supra,* 13 Cal.4th at p. 994.) In any event, the argument fails on the merits because "the accrual of interest is not a discretionary matter but is instead controlled by statute and continues until a judgment is satisfied. ([§] 685.010.)" (*In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 259.) Section 685.010 provides that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

For these reasons, we find no merit in Eliahu's contentions on appeal in case No. H038931 and we will affirm the September 20, 2012 order.

**B.** *Case No. H039676*

The May 15, 2013 order denying Eliahu's claim that the funds held in escrow are exempt from enforcement of Vardi's money judgment is also an appealable order. "Orders granting or denying a claim of exemption are appealable. ([§] 703.600.)" (*Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626 (*Schwartzman*).)

We understand Eliahu to argue that the May 15, 2013 order should be reversed because the trial court erred in denying his claim of exemption for the following reasons: (1) the order contradicts the trial court's prior intention that Vardi's share of the retirement account be paid by way of a QDRO; (2) the order authorizes Vardi to "seize funds from the sale of Eliahu's home," instead of through a QDRO, thereby making him liable for Vardi's taxes and penalties; (3) moving the tax liability on Vardi's share of the retirement account from Vardi to Eliahu is inequitable; (4) the trial court's statement during a November 3, 2010 hearing that Eliahu did not timely comply with the parties' agreement that he would prepare a new QDRO is not supported by the evidence; (5) the order is void because the judge who issued the order failed to respond to Eliahu's statement of disqualification under sections 170.6 and 170.1 and was therefore disqualified; (6) the trial court failed to consider Eliahu's contentions that the escrow funds were exempt under the homestead exemption and also exempt because his son is disabled; and (7) Vardi lacks credibility due to her "unclean hands and misconduct" during the litigation of this marital dissolution action.

We determine that we may not review the merits of Eliahu's contention that the trial court erred in denying his claim of exemption because prior court orders indicated that Vardi's share of the retirement account should be paid by way of a QDRO, not a money judgment. As we have discussed, the September 21, 2010 order that directs payment by way of a money judgment instead of a QDRO was not appealed. Therefore,

9

any argument that a subsequent court order authorizing payment by money judgment is reversible because the trial court intended payment by way of a QDRO is not cognizable in this appeal. (See *Lloyd*, *supra*, 55 Cal.App.4th 216, 219.)

Also not cognizable on appeal is Eliahu's contention that the May 15, 2013 order is void because the judge who issued the order was disqualified due to the judge's failure to respond to Eliahu's statement of disqualification under sections 170.6 and 170.1. Section 170.3, subdivision (d) provides in part that "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding."

Additionally, we are precluded from considering Eliahu's contention, as we understand it, that Vardi's arguments in support of the May 15, 2013 order should be disregarded because she lacks credibility. The general rule is that "[a]ppellate courts 'do not reweigh evidence or reassess the credibility of witnesses. [Citation.]' [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.)

Turning to the merits of Eliahu's appeal, we determine that he has failed to meet his burden as an appellant to affirmatively show error. (See *Denham*, *supra*, 2 Cal.3d at p. 564.) Eliahu filed on November 5, 2012, a claim of exemption that stated that the funds claimed to be exempt were the "proceeds of the sale of [Eliahu's] home at 1470 Hollidale Court, Los Altos" and that the code sections that applied were Code of Civil Procedure sections "704.800" and "704.710-704-850 ($75,000 head of a household exempt)." The trial court denied the claim of exemption on the ground that even if the homestead exemption[8] applied, Eliahu's net proceeds of $1,530,000 from the sale of his

---

[8] "Article XX, section 1.5 of the California Constitution states: 'The Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families.' The Legislature has provided such protection in the Enforcement of Judgments Law. ([§] 680.010 et seq.) Section 704.740, subdivision (a)

house far exceeded the homestead exemption amount.[9]  Eliahu has not disputed this finding on appeal and did not present any contrary evidence during trial court proceedings.

At the hearing on the claim of exemption, Eliahu also argued that he was entitled to an exemption on the ground that his son is disabled.  The trial court pointed out that the disability exemption set forth in section 704.730, subdivision (a)(3)(B)[10] expressly applies where the judgment debtor is disabled and asked Eliahu for legal authority for the proposition that the disability of the judgment debtor's son would qualify for the exemption.  Eliahu did not provide the requested legal authorities during trial court proceedings and has not provided any legal authorities on appeal for his claim of exemption based on disability.

---

provides in relevant part that 'the interest of a natural person in a dwelling may not be sold . . . to enforce a money judgment except pursuant to a court order for sale obtained under this article [Homestead Exemption] and the dwelling exemption shall be determined under this article.'  A dwelling is 'a place where a person resides,' and a homestead is 'the principal dwelling (1) in which the judgment debtor . . . resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor . . . resided continuously thereafter until the date of the court determination that the dwelling is a homestead.' (§ 704.710, subds. (a), (c).)  Such a homestead exemption does not require that a judgment debtor file or record a homestead declaration, but ' "is available when a party has continuously resided in a dwelling from the time that a creditors' lien attaches until a court's determination in the forced sale process that the exemption does not apply" ' [Citation.]" (*Broadway Foreclosure Investments, LLC v. Tarlesson* (2010) 184 Cal.App.4th 931, 935-936, fns. omitted.)

[9]  The amount of the homestead exception ranges from a minimum of $75,000 to a maximum of $175,000, as specified in section 704.730, subd. (a)(1)-(3).

[10]  Section 704.730, subdivision (a)(3)(B) provides in part:  "The amount of the homestead exemption is one of the following:  [¶] . . . [¶] One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:  [¶] . . . [¶] A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment."

11

Accordingly, pursuant to the substantial evidence standard of review that applies to an order denying a claim of exemption, which requires us to view the evidence in the light most favorable to the prevailing party and to resolve all evidentiary conflicts and inferences in favor of the order, we will affirm the May 15, 2013 order denying Eliahu's claim of exemption. (See *Schwartzman*, *supra*, 50 Cal.App.4th at p. 626.)

## IV. DISPOSITION

In case No. H038931, the September 20, 2012 order is affirmed. In case No. H039676, the May 15, 2013 order is affirmed. Costs on appeal in both cases are awarded to respondent.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

12