Filed 1/6/16  Stolz v. Fleischner CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EDWARD STOLZ et al., | |
| Plaintiffs and Appellants, | E062781 |
| v. | (Super.Ct.No. PSC1302320) |
| HANS PETERSON FLEISCHNER, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.
Affirmed.

Donald R. Holben & Associates, Amelia A. McDermott and Andrew A.
Rosenberry for Plaintiffs and Appellants.

Law Offices of Marvin H. Weiss and Marvin H. Weiss for Defendant and
Respondent.

1

## I. INTRODUCTION

In this action, plaintiffs and appellants, Eric Stolz, an individual, and three business entities owned and controlled by Stolz, namely, Royce, Silver State, and Golden State,[1] sued their former attorney, defendant and respondent, Hans Peterson Fleischner, for legal malpractice and breach of fiduciary duty. The trial court dismissed plaintiffs' complaint, with prejudice, and later awarded Fleischner $27,120 in attorney fees and costs pursuant to an attorney fee provision in the parties' hourly fee agreement.

Plaintiffs appeal the postjudgment order awarding Fleischner attorney fees and costs. They claim (1) insufficient evidence supports the court's finding that plaintiffs and Fleischner entered into the hourly fee agreement, because Fleischner adduced only an unsigned copy of the agreement, and (2) even if the parties entered into the agreement in the form adduced by Fleischner, its attorney fee clause was not broad enough to allow Fleischner to recover fees he incurred in litigating plaintiffs' *tort claims* for legal malpractice and breach of fiduciary duty.

We affirm. Substantial evidence shows that the parties entered into the hourly fee agreement in the form adduced by Fleischner, and its attorney fee clause provided that "[t]he prevailing party in any action or proceeding arising out of" the agreement would be awarded its attorney fees and costs. Thus, the fee clause was broad enough to encompass

---

[1] The four plaintiffs and appellants are (1) Eric Stolz, both individually and doing business as Playa Del Sol Broadcasters (Stolz), and three business entities owned and controlled by Stolz and formed in the State of Nevada, (2) Royce International Broadcasting Corp. (Royce), (3) Silver State Broadcasting LLC (Silver State), and (4) Golden State Broadcasting, LLC (Golden State).

the fees Fleischner incurred in litigating plaintiffs' tort claims for legal malpractice and breach of fiduciary duty.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

A.  *Plaintiff's Complaint and the Judgment of Dismissal*

On January 25, 2013, plaintiffs filed a complaint against Fleischner, alleging claims for legal malpractice and breach of fiduciary duty, in the San Francisco County Superior Court as case No. CGC-13-528253.  In November 2013, the case was transferred to the Riverside County Superior Court after the court granted Fleischner's motion to transfer the case.

The complaint alleged that, in 2010, plaintiffs hired Fleischner, "*pursuant to a written hourly based fee agreement*" (italics added), to represent them in various matters, including a dispute in which Broadcast Music Inc. (BMI), was claiming that plaintiffs owed it damages for their unauthorized use of copyrighted material.  Among other things, the complaint alleged Fleischner breached his professional duty to competently represent plaintiffs in the BMI matter and "abandoned" plaintiffs by "abruptly terminat[ing]" his representation of them in January 2012, causing them damages.

Shortly after the case was transferred to Riverside County, plaintiffs' attorney, William Gwire of Gwire Law Offices, moved to be relieved as counsel.  On March 14, 2014, the motion was granted upon the condition that Gwire submit a proposed order relieving him as counsel.  (Cal. Rules of Court, rule 3.1362(e).)  On March 19, 2014, a substitution of attorney was filed, changing plaintiffs' attorney of record from Gwire to

3

plaintiffs in propria persona. Plaintiffs were unrepresented by counsel from March 19, 2014, until November 7, 2014, when they retained new counsel.

Meanwhile, on May 12, 2014, the court ordered plaintiffs to appear on July 11 and show cause why sanctions should not be imposed or their complaint should not be dismissed based on their failure to appear at the May 12 case management conference, and based on the failure of the business entity plaintiffs, Royce, Silver State, and Golden State, to obtain legal counsel. None of the plaintiffs appeared at the July 11 order to show cause hearing, and on July 23 the court dismissed the complaint, with prejudice. On July 31, 2014, a judgment dismissing the complaint, with prejudice, was entered in favor of Fleischner.

B. *Fleischner's Motion for Attorney Fees and Costs*

On October 9, 2014, Fleischner filed and served a motion to recover $42,600 in attorney fees and costs incurred in defending the present action, with declarations from himself and his attorney, Marvin H. Weiss. The motion sought attorney fees pursuant to Civil Code section 1717 and "a written attorney-client hourly fee agreement which provides for recovery of attorney's fees by the prevailing party." In his declaration, Fleischner explained that he no longer had "plaintiffs' original hourly fee agreement," because plaintiffs waited to file their complaint until the day before the one-year statute of limitations expired on their legal malpractice claims (Code Civ. Proc., § 340.6), and the complaint was not served until six months after it was filed. By that time, Fleischner

4

claimed he had purged part of plaintiffs' "physical files," including "the 2010 written fee agreement."

Fleischner further explained that, on March 16, 2007, he "adopted the State Bar Committee on Mandatory Fee Arbitration sample written fee agreement form 'Sample Written Fee Agreement Hourly Litigation' as the basis for [his] hourly fee agreement boilerplate." As submitted: "[His] boilerplate hourly fee agreement was static from March 16, 2007 until July 19, 2011 when [he] added the arbitration clause from the 'Other Clauses of Interest in Fee Agreements' provision from the sample written fee agreement forms. From March 16, 2007 until July 19, 2011 [his] hourly fee agreement provided for the recovery of attorneys' fees as follows:

"13. ATTORNEYS' FEE CLAUSE. The prevailing party in any action or proceeding *arising out of or to enforce any provision of this Agreement . . .* will be awarded reasonable attorneys' fees and costs incurred in that action or proceeding, or in the enforcement of any judgment or award rendered." (Italics added.)

Fleischner claimed this attorney fee clause was contained in the hourly fee agreement between himself and plaintiffs. He attached a "true and correct copy" of his "boilerplate Hourly Fee Agreement as it existed from March 16, 2007 to July 19, 2011" to his declaration  The blank form, "boilerplate hourly fee agreement" was seven pages in length and provided that "[s]enior partners" would be compensated at the hourly rate of $400.

5

C. *Plaintiffs' Opposition Papers*

Fleischner's motion was set to be heard on November 17, 2014. Thus, plaintiffs' opposition, if any, was to be filed and served by November 3, 2014, nine court days before the hearing. (Code Civ. Proc., § 1005, subd. (b).) Plaintiffs did not timely file their opposition papers by November 3.

On November 10, 2014, plaintiffs' newly retained attorneys of record, the law firm of Donald R. Holben & Associates, filed an ex parte application to continue the November 17 hearing to allow them time to prepare and file an opposition.[2] The Holben firm was hired on November 7, after the opposition papers were due on November 3. Fleischner opposed plaintiffs' ex parte application on the ground plaintiffs had not shown good cause for their delay in opposing his motion for attorney fees or in retaining new counsel.[3] Following a November 12 ex parte hearing, the trial court denied plaintiffs' ex parte application to continue the November 17 hearing.

---

[2] After plaintiffs filed their respondents' brief on appeal, we granted the motion of Holben & Associates to be relieved as plaintiffs' attorneys of record, and further granted plaintiffs an extension to serve and file their reply brief within 30 days of July 15, 2015, that is, by August 14, 2015. Plaintiffs did not file a reply brief, and as of this writing each plaintiff, including the three business entity plaintiffs, Royce, Silver State, and Golden State, is representing itself in propria persona.

[3] In his opposition to plaintiffs' ex parte application to continue the November 17 hearing, Fleischner pointed out that Stolz had been declared a vexatious litigant in Sacramento County more than 20 years earlier. (See *Stolz v. Bank of America* (1993) 15 Cal.App.4th 217, 219-220 [affirming order dismissing action by Stolz against Bank of America on the ground there was no reasonable probability Stolz would prevail and because Stolz failed to furnish the security required by vexatious litigant statutes].) Fleischner also claimed that Stolz filed the present action in San Francisco County "for

*[footnote continued on next page]*

On November 13, plaintiffs filed an opposition to the motion.[4]  Plaintiffs pointed out that Fleischner had not produced a *signed* copy of the hourly fee agreement he claimed he entered into with plaintiffs.  In his declaration, Stolz averred he did not recall signing any fee agreement with Fleischner, either on behalf of himself or the other three plaintiffs, and it was his recollection that he continued his professional relationship with Fleischner "without a written agreement."[5]

D.  *The Trial Court's Ruling*

Before the November 17 hearing, the court issued a tentative ruling denying the attorney fee motion on the ground that Civil Code section 1717 had consistently been held not to allow recovery by a prevailing party of attorney fees for tort claims arising out of "a contract" for attorney fees.  On November 17, Fleischner filed a "supplemental argument" in response to the tentative ruling, and the matter was heard on November 17.

---

*[footnote continued from previous page]*
harassment purposes," and the court imposed discovery sanctions on plaintiffs for violating the discovery statutes before it dismissed plaintiffs' complaint.

[4]  The record contains a proof of service showing that plaintiffs' opposition papers were served by facsimile on Fleischner's attorney, Mr. Weiss, on November 13.  But in Fleischner's respondent's brief, Mr. Weiss claims the opposition papers were never served and he and Fleischner first became aware of them while reading plaintiffs' opening brief on appeal.

[5]  Stolz explained he originally hired attorney Matthew Ward to represent him and his companies in connection with some transactional matters; that Mr. Ward associated Fleischer in as cocounsel in one case, and Fleischner eventually took over the entirety of plaintiffs' representation, but Stolz did not recall Fleischner ever asking him to sign a fee agreement.  Stolz adduced a copy of a letter from Fleischner to Ward, dated October 29, 2010, in which Fleischner confirmed his association as cocounsel with Ward, but the letter does not mention any written fee agreement with Stolz.

The record does not include a reporter's transcript or other record of the oral proceedings at the November 17 hearing (Cal. Rules of Court, rule 8.120(b)), but indicates that the court took the matter under submission following the hearing.

On November 24, 2014, the court awarded Fleischner $27,120 in attorney fees and costs, less than the $42,600 sum he requested. In a two-page ruling, the court implicitly found that the parties entered into the hourly fee agreement, including the attorney fee clause, in the form adduced by Fleischner. The court expressly found that Fleischner was the prevailing party on the agreement, and that the attorney fee clause of the agreement, which provided for an award of attorney fees to "[t]he prevailing party in *any action or proceeding arising out of* or to enforce *any provision of this [a]greement*," was "broad enough to encompass" attorney fees incurred in connection with tort claims "arising out of" the agreement. (Italics added.)

Based on Code of Civil Procedure section 1021 and *Santisas v. Goodin* (1998) 17 Cal.4th 599, 606-607, footnote 4, among other case law, the court explained that: "A contract provision for attorney fees to the prevailing party may be broad enough to authorize a fee award in tort as well as contract actions." In contrast to its earlier tentative ruling denying the motion, the court noted that Civil Code section 1717, "does not come into play here," because it "'covers only contract actions, where the theory of the case is breach of contract . . . .'" This appeal followed.

8

### III. DISCUSSION

A. *Substantial Evidence Supports the Court's Implied Finding That the Parties Entered into the Hourly Fee Agreement in the Form Adduced by Fleischner*

In awarding Fleischner attorney fees and costs, the court implicitly found that plaintiffs and Fleischner entered into the hourly fee agreement in the form adduced by Fleischner, even though Fleischner did not produce a signed original or copy of the agreement and claimed he had "purged" or destroyed it. Plaintiffs claim insufficient evidence supports the court's finding that the parties entered into the hourly fee agreement in the form adduced by Fleischner. We disagree.

"A judgment or order of the trial court is presumed correct, and must be upheld if it is supported by substantial evidence, no matter how slight it may be. [Citation.] Further, all evidence must be viewed in the light most favorable to the prevailing party, and all conflicts in evidence or in inferences must be resolved in favor of upholding the trial court's judgment or order. [Citations.] Where sufficiency of the evidence is questioned, the duty of an appellate court begins and ends with a determination that there is in the record evidence legally sufficient to support the judgment order. [Citation.]" (*Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626.)

In his declaration, Fleischner averred that he and plaintiffs entered into an hourly fee agreement, in the form attached to his declaration, including the attorney fee clause. This is sufficient to support the court's implied finding that the parties entered into an hourly fee agreement in the form adduced by Fleischner. (See *Dart Industries, Inc. v.*

9

*Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1068-1070 [content of writing may be proved by secondary evidence]; Evid. Code, §§ 1521, 1523.) In light of Fleischner's declaration, the court reasonably discredited Stolz's contrary claim that he did not recall signing any fee agreement with Fleischner, on behalf of himself or the other plaintiffs and that he and plaintiffs maintained their professional relationship with Fleischner "without a written agreement."

Additionally, and as Fleischner points out, plaintiffs alleged in their complaint that they "*retained [Fleischner] in 2010 pursuant to a written hourly based fee agreement*." (Italics added.) The blank form agreement that Fleischner adduced was a "written hourly based fee agreement," because it provided for the payment of attorney fees at specified hourly rates. This admission in plaintiffs' complaint bolstered Fleischner's credibility and undermined the credibility of Stolz's claim that he and the other plaintiffs never entered into a written agreement with Fleischner.[6]

---

[6] Fleischner claims the doctrine of judicial estoppel precludes plaintiffs from denying that they entered into a written attorney fee agreement with Fleischner. We disagree. "'Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary.'" (*Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 735, fn. omitted.) The doctrine of judicial estoppel applies when "'(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.) The record does not indicate that the third element was met here. Specifically, there is no showing that the court adopted or accepted as true plaintiffs' allegation that they

*[footnote continued on next page]*

Plaintiffs argue Fleischner violated rule 3-700(D) of the State Bar Rules of Professional Conduct, by destroying the parties' signed hourly fee agreement, if any, less than 18 months after Fleischner ceased representing plaintiffs in January 2012, without first contacting plaintiffs and offering to send them the agreement. Though rule 3.700(D) requires attorneys whose employment has terminated to "promptly release to the client, at the request of the client, all the client papers and property," including "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation, whether the client has paid for them or not," the rule does not require the attorney to retain any attorney fee agreement for any specified length of time. Further, plaintiffs have cited no authority for the proposition a terminated attorney's destruction of a signed fee agreement with a client precludes the attorney from claiming the agreement existed, and from recovering fees and costs from the client pursuant to the terms of the agreement.

---

*[footnote continued from previous page]*
"retained [Fleischner] in 2010 pursuant to a written hourly based fee agreement," before the court ruled on Fleischner's attorney fee motion. Thus, plaintiffs were not judicially estopped from taking a contrary position in opposing Fleischner's motion for attorney fees, by claiming they never entered into any written agreement with Fleischner. But, as noted, the credibility of plaintiffs' contrary claim that there was no written agreement was weakened by the inconsistent allegation in their complaint that they had, in fact, "retained [Fleischner] in 2010 pursuant to a written hourly based fee agreement."

B.  *The Attorney Fee Clause in the Parties' Hourly Fee Agreement Was Broad Enough to Encompass Attorney Fees Incurred by Fleischner in Prevailing Against Plaintiffs' Tort Claims for Legal Malpractice and Breach of Fiduciary Duty*

"Code of Civil Procedure section 1021 provides the basic right to an award of attorney fees.  [Citation.]  It states:  'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .'  Under this statute, the allocation of attorney fees is left to the agreement of the parties.  There is nothing in the statute that limits its application to contract actions alone.  It is quite clear from the case law interpreting Code of Civil Procedure section 1021 that parties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract."  (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341.)  Thus, "[i]f a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims . . . ."  (*Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 608.)

Here, the attorney fees clause of the parties' hourly fee agreement provides:  "The prevailing party *in any action or proceeding arising out of* or to enforce *any provision of this Agreement* . . . will be awarded reasonable attorneys' fees and costs incurred in that action or proceeding . . . ."  (Italics added.)  The language of the clause is broad enough to encompass the attorney fees Fleischner incurred in prevailing on plaintiffs' tort claims

12

for legal malpractice and breach of fiduciary duty, because those claims *arose out of* the parties' hourly fee agreement or contractual relationship.

Indeed, numerous cases have held that "arising out of the agreement" language or similar language in attorney fee clauses is broad enough to encompass tort and contract claims arising out of the agreement. (E.g., *Xuereb v. Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at pp. 1342-1343 [clause providing for the recovery of fees "in any 'lawsuit or other legal proceeding' to which 'this Agreement gives rise'" was broad enough to encompass both tort and contract actions]; *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1830-1831 [clause providing for the recovery of fees in "any 'legal action . . . relating to' the contract" broad enough to include tort claims for negligence and breach of fiduciary duty]; *Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 608 [clause providing for the recovery of attorney fees "in any litigation" arising out of the execution of a real estate purchase agreement or the sale of the property broad enough to embrace both tort and contract claims]; see also *Thompson v. Miller* (2003) 112 Cal.App.4th 327, 336 [provision allowing for the recovery of fees for "'any dispute under [the agreements]'" encompassed fees for tort claims]; *Miske v. Coxeter* (2012) 204 Cal.App.4th 1249, 1259 [same].)

Plaintiffs claim the attorney fees clause in the hourly fee agreement did not allow for the recovery of attorney fees incurred in connection with *tort claims* arising out of the hourly fee agreement, including their claims against Fleischner for legal malpractice and breach of fiduciary duty. Instead, they argue, the clause only allowed for the recovery of

attorney fees incurred in actions *to enforce* the hourly fee agreement, or in actions "on the contract." Plaintiffs rely on Civil Code section 1717, which does not apply here, and on *Loube v. Loube* (1998) 64 Cal.App.4th 421 (*Loube*), which involved a more narrowly drawn attorney fee clause than the attorney fee clause here.

Civil Code section 1717 provides that: "(a) In any *action on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.) As such, Civil Code section 1717 "covers *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract. Its only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract." (*Xuereb v. Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at p. 1342.)

As the trial court concluded, Civil Code section 1717 does not apply here because plaintiffs did not sue Fleischner "on the contract" or "on" the parties' hourly fee agreement. Instead, they sued Fleischner for legal malpractice and breach of fiduciary duty, claims sounding in tort, not contract. (*Loube*, *supra*, 64 Cal.App.4th at pp. 429-430 ["although the parties had a contractual relationship, and appellant's claim for legal negligence arose from the relationship between them, which relationship was founded on

14

a contract, the cause of action sounded in tort and was no more 'on the contract' than a claim for breach of fiduciary duty or for fraud involving a contract."].)

The court in *Loube* concluded that the attorney fee clause in the parties' retainer agreement did not allow the attorneys to recover the fees they incurred in litigating their former clients' professional negligence action. As the court explained, the clause was "narrowly drawn" and limited the recovery of fees to actions "on the contract" or "on" the retainer agreement. (*Loube*, *supra*, 64 Cal.App.4th at p. 429.) The professional negligence claims sounded in tort and were "no more 'on the contract' than a claim for breach of fiduciary duty or for fraud involving a contract." (*Id*. at pp. 428-429.) Thus, section 1717 did not allow the attorneys to recover the fees they incurred in litigating their former clients' professional negligence action.

*Loube* is distinguishable because the attorney fee clause in *Loube* did not provide for the recovery of fees "arising out of" the parties' retainer agreement or contractual relationship. *Loube* recognized that "Code of Civil Procedure section 1021 authorizes an award of fees where . . . the parties have agreed that fees will be available in the action being litigated." (*Loube*, *supra*, 64 Cal.App.4th at p. 430; see *Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1076 [distinguishing *Loube* as involving a more narrowly drawn attorney fee clause].) In sum, the attorney fee clause in the parties' hourly fee agreement was broad enough to allow Fleischner to recover the reasonable attorney fees he incurred in litigating plaintiffs' action for legal malpractice and breach of fiduciary duty.

15

## III. DISPOSITION

The postjudgment order awarding Fleischner $27,120 in attorney fees and costs is affirmed.  Fleischner shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


<u>KING</u>
J.


We concur:

<u>McKINSTER</u>
         Acting P. J.

<u>MILLER</u>
      J.


16