Filed 8/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TIMOTHY O'BRIEN, | B288072 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GC048333) |
| v. | |
| AMBS DIAGNOSTICS, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. C. Edward Simpson, Judge. Reversed and remanded.

Woolf & Nachimson, and Benjamin S. Nachimson for Plaintiff and Respondent.

Butterfield Schechter, Marc S. Schechter, and Paul D. Woodard for Defendant and Appellant.

* * * * * *

A judgment creditor sought to collect a money judgment from a debtor's individual retirement accounts. Mere weeks after we ruled in a published decision that the accounts were only

partially exempt from levy pursuant to Code of Civil Procedure section 704.115, subdivisions (a)(3) and (e)[1] (*O'Brien v. AMBS Diagnostics, LLC* (2016) 246 Cal.App.4th 942 (*O'Brien II*)),[2] the debtor formed a new limited liability company, directed the company to adopt a 401(k) retirement plan, transferred the money in his individual retirement accounts to the 401(k) plan, and claimed that the funds were now *fully* exempt from levy under section 704.115, subdivision (a)(1).  This appeal presents two questions:  (1) Is a 401(k) plan that a debtor creates and controls with the avowed purpose of "protect[ing] [his] assets from creditors," a plan principally "designed and used for retirement purposes" (*Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 14 (*Yaesu*); *Dudley v. Anderson (In re Dudley)* (9th Cir. 2001) 249 F.3d 1170, 1177 (*Dudley*)), thereby rendering the funds in that plan fully exempt from levy, and if not, (2) did the debtor's transfer of funds to that 401(k) plan negate the partially exempt status those funds previously held while in the individual retirement accounts?  We conclude that the answer to both questions is "no," reverse the trial court's ruling declaring the funds to be fully exempt from levy, and remand so the trial court can assess the extent of the partial exemption.

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     We previously reviewed the underlying judgment in *O'Brien v. AMBS Diagnostics, LLC* (Jan. 7, 2016) B260301 (nonpub. opn.) (*O'Brien I*).

# FACTS AND PROCEDURAL BACKGROUND

## I.    Facts

### A.    *Underlying lawsuit and judgment*

Plaintiff and respondent Timothy O'Brien (O'Brien) and three others formed defendant and appellant AMBS Diagnostics, LLC (Diagnostics) in 2010.  Diagnostics's business venture disintegrated into a panoply of lawsuits, including Diagnostics's suit against O'Brien for setting up a competing business and trying to steal Diagnostics's customers, thereby breaching his fiduciary duty and intentionally interfering with Diagnostics's prospective economic advantage.  In that suit, the trial court ruled that O'Brien had engaged in that misconduct and awarded $487,977 in compensatory damages and $125,000 in punitive damages.

The court entered judgment against O'Brien and the LLC O'Brien used for his competing business in the amount of $622,957.21.

### B.    *Diagnostics's initial collection effort*

Diagnostics then sought to collect on its judgment by filing notices of levy against several of O'Brien's assets, including four individual retirement accounts then valued at $465,350.04.  It is undisputed that O'Brien had placed the funds in those accounts "to contribute [to] his retirement."

O'Brien responded that the individual retirement accounts were exempt from levy under the exemption for such accounts in section 704.115, subdivision (a)(3).

The trial court ruled that the funds in O'Brien's individual retirement accounts were fully exempt from levy.

We reversed the trial court's ruling, determining that the funds were partially exempt because the exemption for

3

"individual retirement . . . accounts" in section 704.115, subdivision (a)(3) exempts funds, pursuant to subdivision (e), "only to the extent necessary to provide for the support of the judgment debtor," his "spouse and dependents" upon retirement. We remanded the matter back to the trial court to assess, after looking to a number of enumerated factors, what portion of the funds in O'Brien's retirement accounts were "necessary" for these purposes, keeping in mind his "ability to regenerate retirement funds" in the years remaining until he retires.

Our opinion was handed down on April 21, 2016.

### C.    *O'Brien's post-remand acts*

Just 18 days after we issued our opinion, O'Brien took several actions intended, in his own words, "to protect the assets" in his individual retirement accounts "from [his] creditors."  More specifically, O'Brien on May 9, 2016, formed a new limited liability corporation called The Personal Branding Group, LLC (the LLC).  Less than a month later, on June 3, 2016, the LLC formed a 401(k) plan for the LLC's "[e]mployees" and then formally adopted that plan.  In adopting the plan on behalf of the LLC, O'Brien signed both as the LLC's Managing Member and as the Trustee of the 401(k) plan.  O'Brien then transferred (or "rolled over") the money from his individual retirement accounts into the 401(k) plan.  On March 27, 2017, O'Brien dissolved the LLC.

## II.    Procedural Background

In October 2017, Diagnostics served a notice of levy on O'Brien's funds in the 401(k) plan.

O'Brien responded by claiming that his "repositioning" of the funds from his individual retirement accounts to the 401(k) plan rendered the funds *fully* exempt from levy pursuant to

4

section 704.115, subdivision (a)(1), thereby obviating any need for the trial court to examine the necessity of the funds for his retirement (as we had ordered in our prior opinion). He also asserted that his "repositioning" was "not a fraudulent transfer."

Diagnostics opposed O'Brien's claim for exemption. Specifically, Diagnostics argued that (1) the 401(k) plan was not exempt from levy under section 704.115 because it was neither designed nor used for retirement purposes, (2) O'Brien's purported rollover of funds was invalid because he did not meet the qualifications set forth in the 401(k) plan itself for such a rollover, and (3) transferring the money from a partially exempt individual retirement account to a 401k plan could not, in any event, confer fully exempt status upon the funds.

After entertaining oral argument, the trial court issued a written ruling concluding that the money O'Brien had transferred to the 401(k) plan was fully exempt from levy. In reaching this conclusion, the court declined to invalidate the rollover as a fraudulent transfer because "the circumstance[s] of [the] rollover . . . [did] not meet the preponderance of the evidence test of a fraudulent transfer." The court next disregarded O'Brien's failure to meet the 401(k) plan's qualification standards because the plan, by its own terms, could be retroactively amended; thus, the court reasoned, O'Brien could amend the 401(k) plan to change the qualifications requirement in a manner that would retroactively convert his invalid rollover into a valid one. The court further found that "[i]t [was] clear from the facts that [O'Brien's] *funds* in the [individual retirement accounts] were for retirement purposes." (Italics added.) Because the funds were now situated in a 401(k) plan whose contents were fully exempt from levy, the court concluded, the court upheld

5

O'Brien's claim of exemption as to *all* of the funds in the plan and without any need to demonstrate what portion of those funds were necessary for his retirement.

Diagnostics filed this timely appeal.

## DISCUSSION

Although O'Brien and Diagnostics raise a number of issues on appeal, we conclude that the exempt status of the funds O'Brien transferred into the 401(k) plan boils down to two questions: (1) Does the 401(k) plan adopted by the LLC in this case qualify as a "[p]rivate retirement plan[]" within the meaning of section 704.115, subdivision (a)(1), and if not, (2) what is the exempt status of the funds as they now sit in a 401(k) plan that does not qualify for a full exemption under California law?

## I.     Is the 401(k) Plan a "Private Retirement Plan" Fully Exempt from Levy under Section 704.115, Subdivision (a)(1)?

### A.     *Pertinent law*

California's Enforcement of Judgments Law (§ 680.010 et seq.) generally authorizes a creditor holding a "money judgment" to "enforce[]" that judgment against "all property of the judgment debtor" through a "writ of execution." (§§ 695.010, subd. (a), 699.710.) However, to implement our Constitution's command that "a certain portion of the homestead and other property of all heads of families" be "protect[ed], by law, from forced sale" (Cal. Const., art. XX, § 1.5), our Legislature has exempted various items of property from levy by creditors with money judgments. (See §§ 704.010-704.210 [setting forth exemptions]; see generally, *Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1058 (*Sourcecorp*) [so noting].) The debtor bears the burden of establishing that a particular exemption applies. (§ 703.580,

6

subd. (b); *Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626 (*Schwartzman*).)

Section 704.115 exempts "[a]ll amounts held, controlled, or in process of distribution by a private retirement plan" (§ 704.115, subd. (b)), but draws a distinction between two types of "private retirement plans" and grants each of them a different type of exemption. (*McMullen v. Haycock* (2007) 147 Cal.App.4th 753, 755-756 (*McMullen*) [so noting].) Amounts held in "[p]rivate retirement plans" "established or maintained by private employers or employee organizations, such as unions," including "closely held corporations," are *fully* exempt from levy.[3] (§ 704.115, subds. (a)(1) & (b); *Lieberman v. Hawkins (In re Lieberman)* (9th Cir. 2001) 245 F.3d 1090, 1095; *In re Cheng* (9th Cir. 1991) 943 F.2d 1114, 1116-1117.) By contrast, amounts held in "[s]elf-employed retirement plans" or "individual retirement . . . accounts" are exempt from levy "only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor." (§ 704.115, subds. (a)(3) & (e); *Schwartzman*, *supra*, 50 Cal.App.4th at pp. 624-625.)

Critically, however, neither type of exemption is available unless the plan or account holding the funds was, at the time of the levy, "principally" or "primarily" "designed and used for retirement purposes." (*Yaesu*, *supra*, 28 Cal.App.4th at p. 14; *In re Daniel* (9th Cir. 1985) 771 F.2d 1352, 1356-1357 (*Daniel*), disapproved on other grounds in *Patterson v. Shumate* (1992) 504 U.S. 753, fn. 1; *Dudley*, *supra*, 249 F.3d at p. 1177; *Jacoway v.*

---

[3] "Profit-sharing plans designed and used for retirement purposes" are also fully exempt (§ 704.115, subd. (a)(2)), but are not at issue in this case.

*Wolfe (In re Jacoway)* (Bankr. 9th Cir. 2000) 255 B.R. 234, 239 (*Jacoway*); see also § 703.100, subd. (a)(1) [where, as here, there is no lien and the levy predates any court proceedings, "the determination whether property is exempt shall be made [at] . . . [t]he time of levy on the property"]; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 552 [same].) This baseline requirement of a bona fide retirement purpose seeks to accommodate the constitutional mandate to "safeguard a source of income for retirees at the expense of creditors" (*Yaesu*, at p. 13), while at the same time guarding against the over-shielding of assets should the exemption apply to "anything a debtor unilaterally chooses to claim" or label "as intended for retirement purpose." (*In re Rogers* (Bankr. S.D. Cal. 1998) 222 B.R. 348, 351; *In re Barnes* (Bankr. E.D. Cal. 2002) 275 B.R. 889, 897; *Phillips v. Mayer (In re Phillips)* (Bankr. N.D. Cal. 1998) 218 B.R. 520, 522 ["name" alone is insufficient to trigger exemption].)

In assessing whether a plan or account was principally or primarily designed and used for retirement purposes, courts are to look at the totality of the circumstances. (*Cunning v. Rucker (In re Rucker)* (9th Cir. 2009) 570 F.3d 1155, 1161 (*Rucker*); *Dudley*, *supra*, 249 F.3d at p. 1177; *In re Bloom* (9th Cir. 1988) 839 F.2d 1376, 1379 (*Bloom*).) Relevant circumstances include (1) the "debtor's subjective intent" in designing and using the plan or account (*Rucker,* at p. 1162; *Simpson v. Burkart (In re Simpson)* (9th Cir. 2009) 557 F.3d 1010, 1018); (2) the "chronology" or timing of the creation of the plan or account vis-à-vis other events (*Yaesu, supra,* 28 Cal.App.4th at pp. 14-15); (3) the degree of control the debtor maintains "over contributions, management, administration, and use of funds" in the plan or account (*Schwartzman, supra,* 50 Cal.App.4th at p. 629); (4)

whether the debtor violated or complied with Internal Revenue Service (IRS) rules or the plan's rules in contributing to the plan (*Rucker,* at p. 1162; *Bloom*, at p. 1379); and, if the debtor withdraws money from the plan or account, (5) whether those funds were used for retirement or instead some other, non-retirement purpose (*Dudley,* at p. 1177; *Daniel*, *supra*, 771 F.2d at pp. 1354-1357).

Whether a plan or account was principally or primarily designed and used for retirement purposes is a question of fact. (*Schwartzman*, *supra*, 50 Cal.App.4th at pp. 626, 628; *Jacoway*, *supra*, 255 B.R. at p. 237.) Although we ordinarily review a trial court's resolution of factual questions for substantial evidence (*People v. Superior Court (Jones*) (1998) 18 Cal.4th 667, 681), we independently review whether the trial court applied the correct legal standard (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1202).

### B.    *Analysis*

The trial court found that the "*funds* in [O'Brien's retirement accounts] were for retirement purposes." (Italics added.) However, as explained above, the pertinent legal question is whether *the 401(k) plan* was principally or primarily designed and used for retirement purposes. An inquiry into the initial purpose of the *funds* is legally distinct from an inquiry into the purpose of a *plan or account* where the funds were subsequently placed; otherwise, funds that were initially placed in a plan or account for retirement purposes would be forever exempt; however, the law, as noted above, is to the contrary. (E.g., *Daniel*, *supra*, 771 F.2d at pp. 1354-1357 [funds withdrawn from retirement account and used to finance a home purchase do not have a "retirement purpose"]; *In re Marriage of LaMoure*

9

(2013) 221 Cal.App.4th 1463, 1478-1479 [funds originally invested for retirement but later "funnel[ed] . . . through [a]" plan "to secret and shield" the funds from a spouse were "not used for a retirement purpose"].) Thus, by looking to the initial purpose of the funds rather than the purpose behind the 401(k) plan, the trial court applied the incorrect legal standard and its factual finding based on that incorrect standard is irrelevant.

Because the facts regarding the circumstances relating to the creation and use of 401(k) plan are undisputed, we independently assess whether the 401(k) plan at issue in this case was principally or primarily designed and used for retirement purposes. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912 (*Boling*) ["the application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo"].) Applying each of the pertinent factors to the undisputed facts (that is, all of the factors except the use of any withdrawn funds because O'Brien never withdrew any money from the 401(k) plan), those factors all point to the conclusion that the 401(k) plan was *not* principally or primarily designed and used for retirement purposes.

O'Brien freely admitted his subjective intent for creating the 401(k) plan and in transferring the funds in his individual retirement accounts into that plan—namely, "to protect the assets" in those accounts "from [his] creditors." "[T]he shielding and hiding of assets from creditors is clearly not a 'use for retirement purposes.'" (*Daniel*, *supra*, 771 F.2d at p. 1358; *Dudley*, *supra*, 249 F.3d at p. 1177 [same]; *Bloom*, *supra*, 839 F.2d at p. 1378.)

The chronology of events confirms O'Brien's subjective intent. O'Brien created the LLC mere weeks after we declared

10

that the funds in his individual retirement accounts were not fully exempt. Soon thereafter, he created the 401(k) plan, adopted the plan and transferred his money from those accounts into the plan. Once his aim was accomplished, he dissolved the LLC.

What is more, O'Brien in undertaking these various acts maintained almost total control over his "contributions, management, administration and use of [his] funds": *He* created the LLC and named himself as managing member; *he* created the 401(k) plan and named himself trustee; *he* adopted the 401(k) plan for the LLC; and *he* signed the adoption resolution in both of the above stated capacities.

The 401(k) plan also did not comply with the plan's rules by purporting to transfer money into the 401(k) plan despite not meeting the plan's qualifications for doing so. This also violates the IRS rules. (See *In re Bell & Beckwith* (6th Cir. 1993) 5 F.3d 150, 152-153 [contributions to a profit-sharing plan in violation of the plan's terms are void *ab initio*, and hence do not qualify for ERISA protection under the IRS's rules].) Because we must focus on the purpose at the time of levy, it does not matter that the 401(k) plan might be retroactively amended at some point in the future to modify its qualification requirements.

O'Brien resists this conclusion with two further arguments.

First, he argues that the trial court's finding that his rollover was not a "fraudulent transfer" forecloses us from finding that the 401(k) plan was not principally or primarily designed and used for retirement purposes. This finding, O'Brien continues, is supported by *Gil v. Stern (In re Stern)* (9th Cir. 2003) 345 F.3d 1036 (*Gil*), in which the Ninth Circuit held "'that the purposeful conversion of nonexempt assets to exempt assets

11

on the eve of bankruptcy is not fraudulent per se.'" (*Id.* at p. 1043.) Thus, O'Brien concludes, his transfer of partially exempt assets from his individual retirement accounts to the fully exempt 401(k) plan is also not fraudulent. O'Brien's argument mixes apples and oranges. Both the trial court's finding, and *Gil*, addressed whether the debtor's movement of funds was a fraudulent transfer within the meaning of the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq.). However, whether a transfer is "fraudulent . . . does not dispose of the question of whether [a] plan was used for retirement purposes." (*Daniel*, *supra*, 771 F.2d at p. 1358.)

Second, O'Brien contends that he never withdrew any funds from the 401(k) plan and thus the funds retained the same character they had while in his individual retirement accounts— namely, that they were for retirement purposes. However, O'Brien's decision not to withdraw the funds from the 401(k) plan does not "conclusively establish[] a primary retirement purpose" *for the plan.* (*Rucker*, *supra*, 570 F.3d at p. 1161 ["we are . . . aware of no precedent stating that the lack of withdrawals or loans in itself conclusively establish a primary retirement purpose"].) At most, and like the debtor in *Rucker*, O'Brien has established a secondary retirement purpose that has been eclipsed by his principal and primary purpose of creating the 401(k) plan to, in his own words, "protect [his] assets" "from [his] creditors."

## II. What Is the Exempt Status of the Funds?

Because, as we have concluded, the 401(k) plan was not principally or primarily designed and used for retirement purposes, such that the plan is not an exempt plan within the meaning of section 704.115, we must next ask: Did O'Brien's

12

transfer of the partially exempt funds out of his individual retirement accounts into this non-exempt 401(k) destroy the partially exempt status of those funds or leave it intact?  Because this question turns on the application of the law to undisputed facts, our review is de novo.  (*Boling*, *supra*, 5 Cal.5th at p. 912.)

The Enforcement of Judgments Law adopts a default rule that the exempt status of funds will follow those funds as they are moved as long as the funds themselves can be traced back to an exempt source.  (§ 703.080, subd. (a) ["a fund that is exempt remains exempt to the extent that it can be traced into deposit accounts or in the form of cash or its equivalent"]; see also *id.*, subds. (b) & (c).)  However, "particular exemption[s]" may override this default rule and preclude tracing.  (*Id.*, subd. (a) [noting that tracing rule is "[s]ubject to any limitation provided in [a] particular exemption"].)

We conclude that the default tracing rule applies here, and that the funds O'Brien transferred from his individual retirement accounts to the 401(k) plan retained the partially exempt status they acquired when initially held in those accounts.  This conclusion is all but dictated by *McMullen*, *supra*, 147 Cal.App.4th 753.  There, the debtor transferred funds from "[a] fully exempt private retirement plan" into a partially exempt individual retirement account.  (*Id.* at p. 757)  Reasoning that "[t]he goal of protecting retirement assets is best met by applying the [default] tracing [rule] liberally to allow a debtor to trace funds in a manner that best protects his or her assets," *McMullen* held that "the exempt private retirement plan funds retained their full exemption under section 704.115 . . . after being rolled over into the" individual retirement account.  (*Id.* at p. 760.)  Because O'Brien, like the debtor in *McMullen*, also moved his

13

funds from a more exempt placement (here, the partially exempt individual retirement account) to a less exempt placement (here, the non-exempt 401(k) plan), *McMullen*'s logic and holding apply with equal force here.

Diagnostics resists this conclusion. The closest support we can find for its position is *In re Mooney* (Bankr. C.D. Cal. 2000) 248 B.R. 391 (*Mooney*). *Mooney*, which predated *McMullen*, held that a debtor's transfer of funds from a fully exempt retirement plan to a partially exempt individual retirement account caused the funds to lose their fully exempt status because, in that court's view, the statutory language limiting the exemption for funds in an individual retirement account to those funds "necessary" for support (that is, section 704.115, subdivision (e)) constituted an exemption-specific override. (*Id.* at pp. 395-400.)

*Mooney* does not alter our conclusion regarding the applicability of the default tracing rule in this case for three reasons. First, *Mooney*'s conclusion rested on the exemption-specific override applicable to money that is placed in individual retirement accounts. In this case, however, O'Brien moved his money from such accounts into a 401(k) plan that we have determined is, on the facts of this case, not exempt. Because there is no exemption-specific override for such non-exempt funds, *Mooney*'s reason for refusing to apply the default tracing rule does not apply in this case. Second, we agree with *McMullen* that *Mooney* was wrongfully decided. *McMullen* considered but ultimately rejected *Mooney*'s reasoning because it could "see no policy reason to extinguish the full exemption [attaching to funds in a 401(k) plan] simply because the assets are deposited in an [individual retirement account] rather than in a safe deposit box or under a mattress." (147 Cal.App.4th at p. 760.) We are

14

persuaded by this reasoning. Lastly, a ruling that the partial exemption attaching to the funds in O'Brien's individual retirement accounts are automatically obliterated because he transferred them to a non-exempt 401(k) plan is inconsistent with the rule that we must construe exemptions "in the favor of the debtor" (*Sourcecorp*, *supra*, 206 Cal.App.4th at p. 1058), and would effectively grant Diagnostics an unanticipated (and, under the law detailed above, unwarranted) windfall.

Consequently, the funds now sitting in the 401(k) plan must still be evaluated to determine what portion of them is "necessary to provide for the support of" O'Brien when he "retires and for the support of the spouse and dependents" of O'Brien (§ 704.115, subd. (e))—in other words, to undertake the inquiry for which we remanded this case previously.

15

**DISPOSITION**

The order is reversed and remanded. The trial court's ruling that the funds transferred from O'Brien's individual retirement accounts to the 401(k) plan are fully exempt is reversed. Because those funds retain their partially exempt status, we remand for the trial court to undertake the inquiry specified in section 704.115, subdivision (e) as well as in our prior decision in *O'Brien II*, *supra*, 246 Cal.App.4th at pp. 950-951. The parties are to bear their own costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ