Filed 11/19/21  Gluck v. Sarkissian CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DANIEL GLUCK et al., as Trustees, etc., | B308327 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV14590) |
| v. | |
| NICK SARKISSIAN, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Bohm Wildish & Matsen, James G. Bohm, Nicholas P. Carrigan, Hannah F. Jones; Law Offices of Rafik Ayvazi and Rafik Ayvazi for Defendant and Appellant.

Greenberg Glusker Fields Claman & Machtinger and Lee A. Dresie for Plaintiffs and Respondents.

After Nick N. Sarkissian (defendant) defaulted on a commercial lease, Daniel Gluck and Thomas Gluck, as Trustees of the Gluck Family Trust (plaintiffs), filed suit against him for breach of guaranty. The trial court issued a right to attach order and writ of attachment (Code Civ. Proc., § 482.010 et seq.[1]) in favor of plaintiffs, and denied defendant's claim of a retirement plan exemption. Defendant appeals, contending these orders were improperly issued. Because the orders were supported by substantial evidence, we affirm.

## BACKGROUND

### 1. Underlying Suit

On February 8, 2017, plaintiffs, as landlord, and Dancool HVAC Supply (Dancool), as tenant, entered into a written five-year lease of commercial real property (lease) in Canoga Park, California. In addition to a step-up rent, Dancool was required to pay the property taxes and maintain the landscaping and the heating, ventilating, and air conditioning (HVAC) systems for the property. In his capacity as President of Dancool, defendant executed the lease and a guaranty of lease (guaranty) in which he agreed to be personally liable for Dancool's liabilities and obligations under the lease.

In April 2017, Dancool took possession of the Canoga Park property and began paying rent. On February 1, 2020, Dancool stopped paying rent and all other amounts due under the terms of the lease. Defendant refused to pay any amounts owed under the guaranty.

---

[1] Further statutory references are to the Code of Civil Procedure.

In March 2020, two different entities, Fulton Avenue, LLC and Sol Mir Venture, LLC, each filed an unlawful detainer action against defendant and Dancool. In both actions, defendant was dismissed. He was later sued for breach of guaranty by Fulton Avenue, LLC and still subject to such a claim by Sol Mir Venture, LLC. During the same month, plaintiffs initiated an unlawful detainer action against Dancool, alleging $112,085.39 in damages.

On June 29, 2020, defendant and his wife transferred ownership of their second home (Mountain View property) from their revocable family trust to Lantem, a limited liability company. Days earlier, defendant enrolled in two retirement plans: a private retirement plan (PRP) and a related private retirement plan trust (PRPT) through his corporation, Glendale Wholesale Electric Supply, Inc. (Glendale Wholesale Electric). Defendant then transferred his interest in the Mountain View property and Lantem to the PRPT, with an unsigned promissory note secured by their family residence (Heather Ridge residence), along with other assets.

2.     **Breach of Guaranty Action and Application for Right to Attach Order and Writ of Attachment**

On April 15, 2020, plaintiffs filed an action against defendant for breach of guaranty to recover past due rent and other monies owed pursuant to the guaranty. On June 5, 2020, plaintiffs also applied for a provisional remedy pending the outcome of the suit—a right to attach order and writ of attachment in the amount of $774,582.05 (excluding estimated attorney fees of $50,000)—based on the breach of guaranty claim.

On September 22, 2020, defendant filed opposition to the application, arguing the amount of the claim was not fixed or

readily ascertainable and he had valid homestead and private retirement plan exemptions.

Following briefing and a contested hearing on October 7, 2020, the trial court granted defendant a homestead exemption for the Heather Ridge residence, but denied him a private retirement plan exemption. The court issued a temporary protective order, a right to attach order, and a writ of attachment as sought by plaintiffs, and ordered defendant to file an undertaking in the amount of $10,000. This appeal followed.

## DISCUSSION

### 1. Attachment Orders -- Governing Law and Standard of Review

A party applying for a right to attach order and writ of attachment (§ 484.010) bears the burden of establishing four elements: (1) its claim is for money "based upon a contract, express or implied" (§ 483.010, subd. (a)); (2) its claim is "probably valid" (§484.050, subd. (b)); (3) the attachment is sought for a proper "purpose, [i.e.,] recovery on the claim" rather than harassment (§ 484.090, subd. (a)(3)); and (4) the amount to be secured is "readily ascertainable" and greater than $500 (§483.010, subd. (a)). (See *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 852.) If attachment is sought against a "natural person" (like defendant here), the applicant also must show the contract claim arises out of the person's "trade, business, or profession." (§ 483.010, subd. (c).)

The court "shall issue a right to attach order" if the moving party establishes each required showing. (§ 484.090, subd. (a).) "If the right to attach order is issued, a writ of attachment will be issued to attach the property described in the plaintiff's application unless the court determines that such property is

4

exempt from attachment or that its value clearly exceeds the amount necessary to satisfy the amount to be secured by the attachment." (§ 484.050, subd. (d).)

"On appeal from an attachment order, we review the record for substantial evidence to support the trial court's factual findings. [Citation.] We apply the same evidentiary standard to an attachment hearing decided on affidavits and declarations as to a case tried on oral testimony. [Citations.] We will not disturb a determination upon controverted facts unless no substantial evidence supports the court's determination." (*Goldstein v. Barak Construction, supra,* 164 Cal.App.4th at p. 853.)

**2.      Amount of Plaintiffs' Monetary Claim**

As he did before the trial court, defendant limits his challenge to the "readily ascertainable" element of section 483.010, subdivision (a). We therefore confine our review to whether plaintiffs' $774,582.05 claim in their application for a right to attach order was "a fixed or readily ascertainable amount."

In support of their application, plaintiffs included (1) a schedule of the step-up yearly rent increases for the five-year lease and an explanation of the amounts and conditions of the late fee and interest payments and of the obligations to pay the property taxes and maintain the landscaping and HVAC systems for the property; and (2) a spread sheet listing past due amounts, plus amounts that will become due, totaling $774,582.05, for the step-up rent, landscaping, insurance, taxes, interest and late fees through March 2022, when the lease was to expire.

In its ruling, the trial court expressly relied on *CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 541 (*CIT Group*). In *CIT Group*, the tenant

5

defaulted on a commercial equipment lease. (*Id.* at p. 539.) The appellate court held there was a clear basis for attachment. "There is no profit or other calculation to be made to ascertain the monthly rent due; each of the lease schedules sets forth the rental period and the monthly rent due for each machine. The master lease and corresponding lease schedules provide a clear and definite formula for the computation of damages, to wit: the monthly rent multiplied by the unexpired term." (*Id.* at p. 541.) We agree with the trial court's finding that plaintiffs' schedule and spread sheet similarly provided a clear and definite means of computing present and future damages.

Without mentioning *CIT Group*, defendant presents two arguments against the trial court's finding. First, he maintains the amount of the claim is not fixed or ascertainable because plaintiffs sought $112,085.39 in the unlawful detainer action, $774,582.05 in the application for attachment order, and $112,085.39 in the breach of guaranty action upon which the application was based. As the trial court found, the $112,085.39 that plaintiffs prayed for in the breach of guaranty action were the damages due at the time of filing. Plaintiffs' calculation of the $774,582.05 in the application as the damages due for the five-year length of the lease does not make that amount speculative or uncertain.

Defendant further argues the claim for damages was not fixed or certain because "the trial court was required to speculate as to the correct amount of damages, including damages for over 18 months in the future." However, as discussed, *CIT Group* concluded a claim for pretrial attachment damages is not speculative where, as here, future amounts of allowable damages

6

are ascertainable by a clear and definite formula. (*CIT Group, supra*, 115 Cal.App.4th at pp. 540–541, and cases cited therein.)

The trial court's decision to issue a right to attach order and writ of attachment in the amount plaintiffs' request was supported by substantial evidence.

### 3.    Retirement Plan Exemption — Governing Law and Standard of Review

"[T]o implement our Constitution's command that 'a certain portion of the homestead and other property of all heads of families' be 'protect[ed], by law, from forced sale [citation], our Legislature has exempted various items of property from levy by creditors with money judgments." (*O'Brien v. AMBS Diagnostics, LLC* (2019) 38 Cal.App.5th 553, 559 (*O'Brien*).) The specific provision defendant cites as the basis for his claimed exemption, section 704.115, subdivision (b), provides: "All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt."

On the other hand, the exemption does not apply unless the plan "holding the funds was, at the time of the levy, 'principally' or 'primarily' 'designed and used for retirement purposes.' " (*O'Brien, supra,* 38 Cal.App.5th at p. 560.) Whether this test is met depends on the totality of circumstances, including (1) the debtor's subjective intent in creating the private retirement plan; (2) the chronology or timing of the plan's creation relative to other events; (3) the degree of control the debtor maintains over the funds in the plan; (4) whether the debtor violated or complied with Internal Revenue Service (IRS) rules or the plan's rules in contributing to the plan; and (5) if funds are withdrawn from the

7

plan, whether they were used for retirement or, instead, some other purpose. (*Id*. at p. 561.) The debtor bears the burden of proving the private retirement exemption applies. (§ 703.580, subd. (b).) As a question of fact to be decided by the trial court, it is reviewed under the substantial evidence standard on appeal. (*Yeasu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 14; *Schwartzman v. Wilshinsky* (1996) 50 Cal.App.4th 619, 626.)

**4.      Defendant's Claimed Retirement Plan Exemption**

To clarify, defendant is not disputing the trial court's ruling that his Heather Ridge residence qualified for the $175,000 homestead exemption and the surplus equity was subject to a writ of attachment. Rather, defendant disputes the court's conclusion that the private retirement plan exemption did not apply and that the property in his PRPT, including the Heather Ridge residence, was subject to attachment. (§ 487.025.)

Before the trial court, plaintiffs urged that defendant's private retirement plans were not exempt under section 704.115, because they were a sham, a bad faith attempt to shield assets from creditors. For the trial court, the dispositive inquiry then was whether defendant had designed and used the private retirement plans, particularly the PRPT, for retirement purposes.

To show the retirement plan exemption applied, defendant offered the following in his declaration and written opposition to the application: Defendant's company, Glendale Wholesale Electric, was incorporated in December 2003 with three shareholders. Defendant was the current Chief Financial Officer and owned 37.5 percent of the company. In May 2020, Trust-CFO helped defendant develop two retirement plans through Glendale Wholesale Electric. Trust-CFO was an independent private retirement plan administrator. Neither defendant nor

8

his wife had any management authority or control over Trust-CFO.

On June 12, 2020, defendant enrolled in the Glendale Wholesale Electric private retirement plan, the PRP. The target retirement age was 72 years. Prior to that date, defendant and his wife had no retirement plans.

On June 26, 2020, defendant enrolled in a second Glendale Wholesale Electric retirement plan, the PRPT. Defendant transferred assets into the PRPT that were "necessary for [his] retirement." These assets were $5,000 cash, a $1,325,000.00 promissory note secured by the Heather Ridge residence, and defendant's savings account, his interest in Lantem, which held title to the Mountain View property, and his interest in HEVAC, LLC and NCAA, LLC. The assets in the PRPT were "strictly and solely" for his retirement, so that he could continue to support himself and his family.

Defendant had no "direct control" over the management, administration, or use of the funds in the PRPT because it was administered by several different third parties. Neither defendant nor his wife had made any withdrawals from the PRPT since its inception.

In his declaration, defendant blamed the recent spate of lawsuits on his son to whom he had transferred ownership of Dancool in 2019. Defendant stated: "I am currently 68 years old, an insulin dependent diabetic, and a survivor of open-heart surgery. I do not have the health, energy, or strength to start working again in order to pay the Leases and Line of Credit. I believe it would kill me. These claims against Ana [his wife] and I could ruin our retirement if the company and/or Tony [his son] does not pay these debts."

Attached to the defendant's opposition were copies of both retirement plans.  Notably, the PRPT exhibit bore no signatures of defendant, trustee, trust advisor, or trust protectors.  All signature lines were left blank.

In resolving the issue in favor of plaintiffs, the trial court found:  "Given the timing of their creation, the fact that Defendant is a part owner of the company that provides the plans, that there is no averment the plans comport with IRS rules, and the totality of the circumstances, the Court finds that the retirement plan exemption does not apply."  As we explain, that finding was supported by substantial evidence.

In his declaration, defendant made much of his transferred assets in the PRPT as critical to financing his retirement.  However, as we explained in *O'Brien*, "the pertinent legal question is whether *the* [*particular retirement*] *plan* was principally or primarily designed and used for retirement purposes.  An inquiry into the initial purpose of the *funds* is legally distinct from an inquiry into the purpose of a *plan or account* where the funds were subsequently placed; otherwise funds that were initially placed in a plan or account for retirement purposes would be forever exempt; however, the law . . . is to the contrary." (*O'Brien, supra,* 38 Cal.App.5th at p. 561.)

Here, the trial court reasonably inferred that defendant's subjective intent behind the PRPT plan in particular was to shield his assets from his financial obligations.  Indeed, defendant admitted as much in his declaration, stating the pending lawsuits could "ruin [his] retirement" if the company and/or his son failed to pay resulting damages.  The chronology and timing of events relative to the plans' creation supports the inference:  In March 2020, defendant was the target of three suits

10

exposing him to personal liability. Two months later, in May 2020, defendant, who was already past retirement age (at 67 or 68 years old[2]), had his 17-year-old company establish retirement plans for the first time. A month later, defendant enrolled in both plans and transferred his assets to the PRPT.

As for the degree of control defendant maintains over the retirement plans, defendant stated in his declaration that he had "no direct control over the management, administration, or use" of the retirement plans and named three people as trust protector, trustee, and plan advisor. Defendant argues he was just "one of many shareholders of Glendale Wholesale Electric and his actions alone would not be enough to control" the retirement plans. However, defendant did not discount his indirect control of the plans continued existence or termination as part owner and CFO of Glendale Wholesale Electric.

Next, defendant had to show he did not violate IRS rules or the plans' rules in contributing to the plan. He did not address IRS rules and simply asserted, without more, that he had complied with the plans' rules.

Finally, defendant argues the fact that he has not withdrawn funds from the PRP "is further support that the PRP was created for retirement purposes," citing several federal cases. We are not persuaded. As we determined in *O'Brien,* the debtor's decision not to withdraw funds from the retirement plan does not " 'conclusively establish[] a primary retirement purpose' *for the plan.*" (*O'Brien, supra,* 38 Cal.App.5th at p. 563.) The trial court's finding that the retirement plan exemption did not apply to defendant was supported by substantial evidence.

---

[2] Defendant avers to be both ages in his declaration.

## DISPOSITION

The orders are affirmed.  Plaintiffs are to recover their costs on appeal.

NOT TO BE PUBLISHED.


                                              LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

12