Filed 2/17/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DOUGLAS A. BAGBY, | B333649 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC663174) |
| v. | |
| JOSEPH DANIEL DAVIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed.

Nemecek & Cole, Frank Wynn Nemecek and Mark Schaeffer for Defendant and Appellant.

Douglas A. Bagby, pro. per., and James L. Keane; Stiller Law Firm and Ari J. Stiller for Plaintiff and Respondent.

## INTRODUCTION

Here we hold California law applies to collection actions in California courts, regardless of where the judgment debtor lives. We also hold that a surrendered life insurance policy is not necessarily exempt from collection. Respondent Douglas A. Bagby previously obtained a $5 million default judgment against appellant Joseph D. Davis. Bagby sought to collect by levying on two Individual Retirement Accounts (IRAs) belonging to Davis. Davis argued Bagby could not collect on those accounts because Davis is a resident of Florida and therefore certain exemptions under Florida law should apply. Davis also argued Bagby could not collect because the accounts were funded with the proceeds from a surrendered life insurance policy, held in a private retirement plan, both of which are exempt from collection under California law. The trial court applied California law and found Davis failed to carry his burden to prove any relevant exemption. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I.   *Previous History*

This is the fourth appeal this division has received in an ongoing dispute between two attorneys.[1] The underlying facts are as follows. In July 2013, Bagby was involved in a motor vehicle collision, losing one leg below the knee. (*Bagby v. Superior Court* (April 16, 2018) B287188 [nonpub. opn.] (*Bagby I*).) Bagby hired Davis to represent him in a personal injury action.[2]

---

[1]    There is at least one additional appeal, involving a house in Idaho, which the Idaho Supreme Court resolved in 2023. (*Bagby v. Davis* (2023) 173 Idaho 903.)

[2]    At some point, it is not clear exactly when, Bagby in turn represented Davis in a marital dissolution action.

2

(*Ibid.*) That case went to trial in June 2016, and the jury awarded Bagby more than $5 million in damages. (*Ibid.*)

In May 2017, after receiving that verdict, Bagby sued Davis for breach of contract and malpractice. (*Bagby I, supra,* B287188.) Davis defaulted, then successfully moved to set aside the default. (*Ibid.*) Bagby petitioned for a writ of mandate, which this division granted, ordering the trial court to reinstate the default. (*Ibid.*)

On remand, the trial court entered judgment in the amount of $27 million. (*Bagby v. Davis* (Jan. 24, 2020) B294081 [nonpub. opn.] (*Bagby II*).) Davis appealed, arguing Bagby was limited to the amount demanded in his complaint, which was $5 million. (*Ibid.*) This division agreed and reversed, directing the trial court to let Bagby choose between accepting a default judgment for $5 million or vacating the default and filing an amended complaint. (*Ibid.*)

Bagby chose the $5 million default judgment, which the trial court entered in July 2020. Bagby then sought to enforce the judgment by seeking an order for sale of a residence Davis owned in Indian Wells and an order directing Davis to repatriate $3.5 million he had transferred to a limited liability company located in Nevis. (*Bagby v. Davis* (Dec. 13, 2022) B320533 [nonpub. opn.] (*Bagby III*).) The trial court denied those requests as beyond its enforcement authority. (*Ibid.*) Bagby appealed and this division affirmed, explaining that (1) since Indian Wells is in Riverside County, Bagby was required to seek the sale of the Indian Wells property in that county, and (2) if Bagby wanted to unwind the $3.5 million transfer, his remedy was in a separate action for fraudulent transfer. (*Ibid.*)

3

II.   *Present Appeal*

In early 2023, Bagby obtained a writ of execution and sought to levy on two IRAs belonging to Davis, held by LPL Financial Holdings Inc. (LPL).  The original source of the funds was an insurance policy held in a pension and profit-sharing plan established by Davis's former law firm, Davis & Thomas.  The insurance policy was cashed out, and the funds "rolled over" into the IRAs.

In response to the levy, Davis submitted a claim of exemption, arguing the IRAs were not subject to enforcement proceedings for two reasons: (1) Davis had moved to Florida, so a Florida statute exempting the IRAs from collection should govern, and (2) the IRAs were covered by a retirement plan exemption even under California law.  Bagby opposed the claim of exemption, arguing Davis had failed to carry his burden of proving the exemption.

The trial court first heard Davis's claim of exemption on July 19, 2023.  It issued a tentative ruling indicating Davis lived in Florida,[3] applying Florida law, and finding Davis had failed to carry his burden to prove the exemption.  However, the court ultimately continued the hearing to get further briefing on Florida law.

The court then issued another tentative ruling, this time holding that where Davis lived was irrelevant—a claim of exemption should be determined according to the law of the forum state.  The tentative ruling went on to find that Davis had failed to meet his burden of proving the exemption under California law.  The court set a hearing on this tentative ruling for August 8, 2023.

---

[3]   One month before, the trial court had found that Davis resided at the Indian Wells property and was therefore subject to a subpoena.  In its ruling on the claim of exemption, the court explained that "residence" for subpoena purposes differed from "domicile" for exemption purposes.

At that hearing, Davis cited *McMullen v. Haycock* (2007) 147 Cal.App.4th 753 (*McMullen*) for the first time, arguing it was directly on point. *McMullen* held that funds from an exempt "private retirement plan" retain their exemption even after they are rolled over into an IRA. (*McMullen, supra,* 147 Cal.App.4th at pp. 755–756.) The court once again ordered further briefing. The parties supplied that briefing; Davis argued *McMullen* was on point and binding, and Bagby argued it was not.

On September 5, 2023, the trial court issued its final ruling. The court concluded a claim of exemption is governed by the law of the forum state. It then determined that under Code of Civil Procedure section 704.115,[4] assets held in private retirement plans are fully exempt, while IRAs are exempt only to the extent they are necessary to support the judgment debtor. It also held, following *McMullen*, that funds rolled over from a private retirement plan into an IRA retain their full exemption. However, the court found Davis failed to meet his burden of proving that the source of the funds in the IRAs was a private retirement plan. It further found Davis failed to show the IRAs were necessary for his support. Therefore, the court denied Davis's claim of exemption, permitting Bagby to levy on the IRAs.

Davis timely appealed.

## DISCUSSION

Davis challenges the jurisdiction of the court, arguing the IRA funds are in South Carolina and the writ of execution expired before the trial court ruled on the claim of exemption. He also challenges the trial court's choice of

---

[4] All future statutory references are to the Code of Civil Procedure, unless otherwise stated.

law, arguing the court should have applied Florida law. Finally, Davis challenges the trial court's application of the law, arguing the IRAs are exempt from collection even under California law.

For the reasons given below, we conclude Davis's jurisdictional challenges are either forfeited or lack merit. We hold claims of exemption are determined by the law of the forum state and therefore the trial court properly chose to apply California law. And we conclude California law does not exempt the IRAs from collection. Therefore, we affirm.

### I.    *Standard of Review*

The trial court's decision resolved questions of both law and fact. We review the court's conclusions of law de novo. (See *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183.) We review the court's factual findings for substantial evidence. (*Ridec LLC v. Hinkle* (2023) 92 Cal.App.5th 1182, 1197 (*Ridec*).) Where the trial court found Davis failed to carry his burden of proof, Davis's burden on appeal is to show the evidence compels a finding in his favor as a matter of law. (See *Id.* at pp. 1197–1198.)

### II.    *Jurisdiction*

Davis argues the trial court lacked jurisdiction over the funds because the funds are in South Carolina and are therefore beyond the control of courts in other states. This argument is unpersuasive for two reasons.

First, Davis has forfeited the point by failing to raise it below. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074 (*Delta Stewardship*).) In fact, the argument Davis did press below—that Bagby should have attempted to collect on the IRAs in the courts of Florida—runs

6

counter to any argument that the funds are only subject to collection in South Carolina.

Second, the argument ignores the nature of the funds. Funds held in an account are intangible. (*Pacific Decision Sciences Corp. v. Superior Court* (2004) 121 Cal.App.4th 1100, 1107–1108 (*Pacific Decision*).) They have no physical characteristics and therefore cannot be located in any particular place. (*Id.* at p. 1108.) Thus, when the issue is a request that the funds be paid to one claimant over another, the funds are deemed to be located wherever there is personal jurisdiction over the custodian. (*Ibid.*) In *Pacific Decision*, the evidence was clear that the custodians were located solely in New Jersey and Florida, and the trial court made orders expressly to be performed out-of-state. (*Id.* at pp. 1104, 1108.) Here, however, Davis has not argued at any point that California lacks personal jurisdiction over LPL.

Davis relies on *De La Montanya v. De La Montanya* (1896) 112 Cal. 101 (*De La Montanya*), a family law case in which the defendant husband left his wife, taking their two infant children with him, and moved to Paris, France. The plaintiff wife filed suit two days after he left, and obtained a default divorce decree that included an award of custody and alimony. (*Id.* at p. 106.) The California Supreme Court reversed that award, finding that the court had no jurisdiction over the children or the husband, now located in France. (*Id.* at pp. 108–109.) But *De La Montanya* was decided under the principles of personal jurisdiction set forth in *Pennoyer v. Neff* (1877) 95 U.S. 714, long since overruled. (*Shaffer v. Heitner* (1977) 433 U.S. 186; *Miller v. Superior Court* (1961) 195 Cal.App.2d 779, 786–787.) And to the extent it is still good law, as a family law case involving international travel and residency, *De La Montanya* is not controlling here.

7

Davis also argues the trial court lacked jurisdiction to rule on the claim of exemption because a writ of execution "expires" after 180 days, the sheriff returned this writ after it "expired," and the trial court did not rule on the claim of exemption until after that expiration. In support, Davis cites two statutes—section 699.510, subdivision (a), which instructs the clerk of the court not to issue a new writ of execution until 180 days have passed or the prior writ has been returned, and section 699.530, subdivision (b), which prohibits the sheriff from levying on property under a writ that is more than 180 days old. Neither statutory provision limits the jurisdiction of the court, or prevents it from ruling on existing levies. Further, this argument too is forfeited; Davis did not raise it below. (*Delta Stewardship, supra,* 48 Cal.App.5th at p. 1074.)

Finally, Davis contends the court was required to hold a hearing within 30 days of the date Bagby moved for a ruling on Davis's claim of exemption. Davis is correct about the time limit, but incorrect about its application. Section 703.570, subdivision (a) imposes the 30-day time limit, but permits the trial court to continue the hearing for good cause. (§ 703.570, subd. (a).) Here, as Bagby points out, the trial court found good cause for the delay in its own heavy calendar. On reply, Davis argues the court could only continue the hearing beyond the limit if it first set the hearing within the limit. Davis cites no authority in support of this position, and we decline to adopt a rule that elevates form over substance in this way.

Because funds held in an account are intangible, they are located wherever jurisdiction can be obtained over the custodian of the account. (*Pacific Decision, supra,* 121 Cal.App.4th at pp. 1107–1108.) In the absence of any challenge to the trial court's jurisdiction over LPL, the funds are located here in California and are subject to the court's jurisdiction.

8

III.    *Choice of Law*

Davis contends that because he lives in Florida, the trial court should have applied Florida law to determine whether the IRAs were exempt. The court ruled Davis's domicile was irrelevant, because the law of the forum state governs the determination of whether an asset is exempt from collection. The court relied on an opinion from this division, *In re Marriage of DeLotel* (1977) 73 Cal.App.3d 21 (*DeLotel*). That decision is on point.

In *DeLotel*, the trial court entered a stipulated judgment. (*DeLotel, supra,* 73 Cal.App.3d at p. 22.) The judgment debtor subsequently moved to Oregon. (*Id.* at pp. 22–23.) Almost two years later, the judgment creditor levied on a pension provided to the debtor by the United States Navy. (*Id.* at p. 23.) The debtor moved for an exemption, arguing Oregon law should apply, but the trial court denied the motion. (*Id.* at pp. 23–24.) The court of appeal affirmed, explaining that exemption laws do not create substantive liability or defenses, they merely govern the remedies each state's courts may award. (*Id.* at p. 24.) Therefore, Oregon's exemption laws do not govern in California courts.[5] (*Id.* at p. 24.)

Davis attempts to distinguish *DeLotel* by arguing that the location of the Navy pension was not at issue in that case, and the IRAs here are located in South Carolina. Because we conclude, for the reasons given above, that the funds are located in California and subject to our jurisdiction, we reject that distinction. On reply, Davis also attempts to distinguish *DeLotel* on the grounds that the judgment there was for child support, and child support judgments are governed by special statutes. However, *DeLotel* did not rest

---

[5]     This rule has been adopted by the majority of states. (*In re Fernandez* (W.D. Tex., Aug. 5, 2011, No. EP-11-CV-123-KC) 2011 WL 3423373, p. 7 [collecting cases].)

9

any of its analysis on these points, and Davis does not explain how the statute at issue in *DeLotel* (former § 690.18) imposed a unique rule regarding choice of law.

Finally, Davis argues that under Civil Code section 946, personal property follows the person of its owner. But Davis cites no authority applying that statute to the enforcement of a judgment. The authority he does cite, *In re Nolan's Estate* (1955) 135 Cal.App.2d 16, explains that Civil Code section 946 was intended to govern probate cases where the decedent owned property located in a different state. (*Id.* at p. 20.) That is not the situation here.

The trial court properly applied California law under *DeLotel*.[6]

IV.    *California Law*

Davis claims the IRAs are exempt from collection even under California law. Section 703.080 provides that exempt funds retain their exemptions even if they are moved to a different account, to the extent the money can be properly traced. (See also *McMullen, supra,* 147 Cal.App.4th at p. 758.) Here, the money in the IRAs came from cashing out an unmatured life insurance policy held in a plan established by Davis's former law firm; the policy was cashed out into the plan, and the funds were rolled over into the IRAs.

Davis argues the funds in the IRAs acquired an exemption at each step of that journey. First, he argues the funds are exempt under section 704.100,

---

[6]    Having reached this conclusion, we need not discuss Davis's arguments regarding his domicile or residency, including his attempt to apply collateral estoppel to those subjects. Nor need we discuss Florida law.

10

subdivision (a) because they came from an unmatured life insurance policy.[7] Second, he argues the funds are exempt under section 704.115 because that policy was held in, and cashed out into, a private retirement plan. Third, he argues the IRAs are themselves exempt accounts. We are not persuaded.

A.      *Life Insurance Exemption*

The statutes that currently govern the enforcement of judgments against life insurance policies were enacted in 1982. (Stats. 1982, ch. 1364, § 2, pp. 5124, 5158, 5201 (operative July 1, 1983).) The statutory scheme distinguishes between unmatured and matured policies. Unmatured policies are not subject to collection efforts, except insofar as they have loan value. (§ 704.100, subds. (a)-(b).) However, a creditor who wants to collect on that loan value may not do so using a writ of execution (§ 699.720, subd. (a)(6)); they must instead obtain an assignment order (§ 708.510, subd. (a)(6)). On the other hand, matured life insurance policies are subject to collection, unless the funds are needed to support the debtor or the debtor's spouse and dependents. (§ 704.100, subd. (c).)

In the initial briefing, Davis argued the proceeds from the surrender of this life insurance policy were entirely exempt from collection, while Bagby argued he could still collect the loan value. Neither side discussed the rule preventing Bagby from collecting the loan value by the method used here: a writ of execution. (§ 699.720, subd. (a)(6).) Pursuant to Government Code

---

[7]      Davis raised the unmatured life insurance policy exemption with the trial court at the very last minute, in the final round of supplemental briefing and after both rounds of oral argument. Bagby did not respond to the argument in his supplemental reply before the trial court, and the court did not discuss this exemption in its order.

section 68081, we asked the parties to file supplemental briefs on that subject.

In the supplemental briefing, Davis argued there was no need to discuss the loan value exception because the determination of whether property is exempt is made as of the time of levy; at the time of levy, the policy had been surrendered in exchange for cash, and therefore there was no loan value.  Bagby argued that once an insurance policy is surrendered, it should be treated as if it had matured.  We find Bagby's argument persuasive.

The prior statutory scheme did not distinguish between matured and unmatured life insurance policies; instead, it barred collection of any life insurance benefit for which the monthly premium had been less than $500. (*Headen v. Miller* (1983) 141 Cal.App.3d 169, 174–175 & fn. 9.)  Section 704.100 removed that dollar amount and introduced the distinction between matured and unmatured policies to "prevent[] the judgment creditor from forcing the judgment debtor to surrender a life insurance policy for its cash value."  (1982 Creditors' Remedies Legislation (Sept. 1982) 16 Cal. L. Rev. Comm. Rep. (1982) p. 1408.)  This preserved the policy as a means of support for the debtor, who might not be able to procure new insurance. (Recommendation Proposing Enforcement of Judgments Law (Oct. 1980) 15 Cal. L. Rev. Comm. Rep. (1980) pp. 2082–2083.)

However, if the judgment debtor voluntarily decides to surrender the policy, the statute has served its purpose.  That is the case here; there is no indication that Davis or the administrator of his plan was compelled by court process to surrender this policy.  And treating the policy as matured merely changes the nature of the exemption; matured policies are still protected under section 704.100, subdivision (c), to the extent the funds are necessary

12

to support the debtor or their spouse or dependents. Treating a voluntarily surrendered policy as matured preserves both the debtor's accountability to creditors and his ability to make judgments about what is necessary for his support. (*In re Simpson* (9th Cir. 2009) 557 F.3d 1010, 1016, fn. 5.)

Further, as Davis points out, the statute granting an exemption for unmatured life insurance cannot be fully applied after a policy is surrendered. Section 704.100, subdivision (a) permits a creditor to recover an unmatured policy's loan value. But once the policy is surrendered, there is no loan value to collect; there is only the cash held by or on behalf of the debtor. The court would have to look backwards to determine what the loan value was at the time the policy was surrendered. Assuming it could do this, the only authorized method of collection is an assignment order. (§ 708.510, subd. (a)(6).) However, assignment orders merely direct the debtor to assign to the creditor any rights the debtor may have to future payments from third parties, such as rents or royalties. (§ 708.510, subd. (a).) An order to assign rights to future payments is not the proper means to collect funds already held in the judgment debtor's name.[8]

In sum, treating a surrendered policy as still unmatured would eliminate the judgment creditor's statutory right to collect part of the policy's value: once a policy has been surrendered, there is no loan value to collect and no available means by which to collect it. Davis urges us to reach exactly this result. But we do not believe the Legislature intended to render ineffective the provisions of section 704.100 that permit collection of insurance policy loan value by rendering that loan value uncollectible as a practical matter. (See *Tuolumne Jobs & Small Business Alliance v. Superior*

---

[8] Such funds may be reached by writ of execution (the procedure Bagby employed here) or turnover order, among other means. (§§ 699.040, 699.080.)

13

*Court* (2014) 59 Cal.4th 1029, 1037 [statutory interpretations should be avoided if they lead to absurd results or render part of the statute surplusage].)

For these reasons, we hold that if a life insurance policy is voluntarily surrendered, it is properly treated as having matured, and the exemption for unmatured policies no longer applies. Instead, the exemption for matured policies applies. That exemption requires the debtor to prove the money is "reasonably necessary" for his support, or the support of his spouse or dependents. (§ 704.100, subd. (c).) As explained below, Davis has made no attempt to carry that burden.

### B.     *Private Retirement Plan Exemption*

Section 704.115 provides that a private retirement plan is exempt from collection. There is no statutory definition of the term "private retirement plan." Nor does case law provide one.[9] However, we need not articulate a definition here, because case law does establish that a private retirement plan must at least be a retirement plan; that is, it must be principally or primarily designed and used for retirement purposes. (*O'Brien v. AMBS Diagnostics, LLC* (2019) 38 Cal.App.5th 553, 560 (*O'Brien*); *Yaesu Electronics Corp. v. Tamura* (1994) 28 Cal.App.4th 8, 13–14.) Davis had the burden of proving the plan at issue here met that requirement. (§§ 703.080, subd. (b)

---

[9]     The trial court relied on two federal district court cases that suggest a two-element test, of which the first element is whether the plan was provided by a corporation. (*Salameh v. Tarsadia Hotel* (S.D. Cal. Oct. 14, 2015, No. 09cv2739-GPC) 2015 WL 6028927 at p. 4; *Century Sur. Co. v. 350 W.A., LLC* (S.D. Cal. June 27, 2008, No. 05-CV-1548-L) 2008 WL 2630959 at p. 2.) Both cases rely solely on *In re Cheng* (9th Cir. 1991) 943 F.2d 1114, which does not articulate such a test.

14

and 703.580, subd. (b).) The trial court found Davis failed to meet that burden.

The court found Davis established a pension and profit-sharing plan in 1995 as one of two named partners in the law firm of Davis & Thomas. Davis and his partner, Thomas, were the trustees of the plan. The sole asset held in the plan for Davis was a life insurance policy. At some point, Davis took a loan of more than $1 million against the policy; he then allowed hundreds of thousands of dollars in interest to accumulate rather than paying it back. Davis did not offer any explanation of what the loan was for. Because of the loan and outstanding interest, when the policy was cashed out, its potential value of $3,021,476 was discounted by $1,960,829.77.

Davis does not contest those findings, or otherwise carry his appellate burden to explain how the evidence compels a different result as a matter of law. (*Ridec, supra*, 92 Cal.App.5th at pp. 1197–1198.) As the trial court explained, to determine whether the plan was designed and used for retirement purposes, the court needed to evaluate the degree of control Davis had over the plan and how any withdrawn funds were used. (*O'Brien, supra*, 38 Cal.App.5th at p. 561.) Davis provided little evidence on this subject, and what he did provide weighed against him. The only meaningful details available to the trial court were that the plan existed, Davis was one of two trustees in charge, the plan had a single asset, and Davis had borrowed one-third of that asset's value and allowed another third to be consumed by unpaid interest. Davis did not explain why any of this was done. None of these facts indicates a plan designed and used for retirement purposes.

Davis focuses the bulk of his argument on the tracing statute and *McMullen*. However, *McMullen* is not binding here. The sole question in that case was whether funds transferred from a private retirement plan to an

15

IRA retained their exemption after the transfer. (*McMullen, supra*, 147 Cal.App.4th at pp. 755–756.) There was no dispute in *McMullen* about whether the plan at issue was in fact a private retirement plan. Funds cannot carry an exemption with them if they have no exemption to carry.

C. *Individual Retirement Account Exemption*

Davis argues the trial court's focus on his alleged private retirement plan was "misplaced" because the plan no longer existed when the funds were levied on; at that point, the funds were in the IRAs. Relying on *O'Brien*, Davis argues again that the exempt status of funds is determined as of the time the funds were levied on, so the trial court should only be concerned about where the funds were when the levy occurred. There are three flaws in this position. First, it contradicts Davis's other arguments. Second, it misreads *O'Brien*. Third, it assumes Davis's IRAs are themselves exempt from collection—they are not.

Both here and below, Davis has taken the position that the funds in the IRAs are exempt because they are traceable to exempt accounts: either to his alleged private retirement plan, or to the insurance policy held in that plan. These arguments cannot succeed unless the money is traced and the plan or policy it came from is determined to be exempt. And this determination cannot be made by looking at a point in time after the plan or the policy no longer existed.

Davis cites *O'Brien* for the proposition that the trial court should have focused on where the funds were at the time of levy, rather than where they came from. That is not what *O'Brien* held.[10] *O'Brien* held that funds in an

---

[10] The facts in *O'Brien* were the reverse of the situation here: the debtor had moved money from several IRAs into an alleged private retirement plan,

16

alleged private retirement plan would only be exempt from collection if the plan was designed and used for retirement purposes as of the time of the levy. (*Id.* at p. 560.) Because the debtor in *O'Brien* had set up the plan at issue for the sole purpose of evading collection, he was not entitled to the exemption. (*Id.* at pp. 561–562.)

Having reached that conclusion, the panel in *O'Brien* then followed *McMullen*, traced the funds back to the accounts from which they came, and remanded the case for the trial court to determine what portion of the funds were exempt. (*O'Brien, supra*, 147 Cal.App.4th at pp. 563–565.) *O'Brien* does not instruct trial courts to look solely at the location of the funds when they are levied on; in fact, it directs the opposite.

Finally, the funds at issue here were in IRAs when the levy occurred. Section 704.115, subdivision (e) exempts IRAs from collection "only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires." Davis is already retired, so the funds are only exempt to the extent they are currently necessary to support him, his spouse, or his dependents. Davis offered no evidence on this point below and offers no argument on it here. In fact, the trial court noted Davis's reported income of more than $500,000 per year in finding Davis had not established his IRAs were exempt. The trial court did not err. The IRAs are subject to collection.

---

*after* the money had already been levied upon. (*O'Brien, supra,* 38 Cal.App.5th at pp. 557–558.) The creditor then served a new notice of levy on the alleged private retirement plan. (*Id.* at p. 558.)

17

V.    *Taxes*

In the final paragraph of his opening brief, Davis argues the trial court erred by failing to permit him to hold back sufficient money to pay any taxes or penalties resulting from withdrawal of the funds in the IRAs.  Section 704.115, subdivision (e)(3) provides that, in determining how much of an IRA is exempt, "the court shall allow the judgment debtor such additional amount as is necessary to pay any federal and state income taxes owed as a result of the application of funds in a retirement plan to the satisfaction of the money judgment."  Davis requests that we direct the trial court to determine the amount of this additional exemption on remand.  We decline that invitation.

Nothing in the record suggests Davis claimed the benefit of section 704.115, subdivision (e)(3) below.  The trial court was not asked to rule on it, or make any factual findings regarding the amount properly held back. Therefore, Davis has forfeited the issue.  (§ 703.030; *Delta Stewardship, supra,* 48 Cal.App.5th at p. 1074.)


## DISPOSITION

The order of the trial court is affirmed.  Bagby shall recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**



                                            ZUKIN, P. J.
WE CONCUR:




COLLINS, J.                       TAMZARIAN, J.


18